GREENWICH VILLAGE ASSOCIATES, Respondent, v JAQUES SALLE et al., Appellants.

First Department, September 5, 1985

### APPEARANCES OF COUNSEL

*G. Oliver Koppell* of counsel (*Koppell & Deutsch,* attorneys), for appellants.

*Howard Schechter* for respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

Respondents Jaques and Roxanne Salle have occupied loft space on the second floor of 786-88 Greenwich Street in lower Manhattan since December 1972, pursuant to a sublease with D'Agostino Greenwich Village Corp., which had leased the entire building, and operated a D'Agostino supermarket on the

first floor. The sublease was for an initial term of five years, and provided for three five-year renewal periods at respondents' option extending through 1992. After taking possession respondents made extensive renovations to the premises.

In January 1982, petitioner, a corporation closely related to D'Agostino Supermarkets, and one of the principals of which is Nicholas D'Agostino, Jr., acquired fee title to the property from the then owner, Atloy Corporation, and simultaneously accepted a surrender of the prime lease from D'Agostino Greenwich Village Corp. Thereafter, on January 6, 1982, petitioner entered into a new lease with D'Agostino Supermarkets for operation of a D'Agostino supermarket on the first floor of the premises. When respondents refused to execute a new lease providing for an increased rental from $460 to $1,250 monthly,[1] petitioner purported to avail itself of a provision in the sublease whereby termination of the sublease was effected by termination of the prime lease.

The only sublease provisions concerning termination are the following two rider paragraphs:

"46. Termination of Underlying Lease.

"If the term of the Underlying Lease shall for any reason except Landlord's default thereunder, be terminated prior to the expiration date of this Agreement, or in the event any action is commenced or threatened against the Landlord and/or Tenant by virtue of the existence of this Agreement, the Landlord shall have the right to terminate this Agreement and/or to take such other action as Landlord may consider to be necessary or desirable. In any such event, the Landlord shall not be liable to Subtenant by reason thereof. The Landlord covenants and agrees with the Tenant to perform all of the terms of the Underlying Lease so long as Tenant shall not be in default hereunder.

"47. Termination.

"Notwithstanding anything to the contrary herein contained, this Agreement shall terminate in the event that:

"(a) the Underlying Lease shall be terminated for any reason; or

"(b) the Tenant shall be in default of any of the provisions of this Agreement, including the Underlying Lease incorporated herein by reference."

---

**1.** The sublease's options provided for rent increases for each of the three renewal periods. If the final option were exercised for the period from January 1, 1987 to December 31, 1992, the rent would have been approximately $608 per month.

Alleging expiration of the sublease, petitioner thereafter commenced this holdover proceeding. After joinder of issue[2] the parties cross-moved for summary judgment. The Civil Court (Saxe, J.), denied petitioner's motion, granted respondents' cross motion and dismissed the petition. Appellate Term modified the order to deny the cross motion, and respondents appealed by permission of this court. We modify to grant the cross motion and dismiss the petition.

As the Civil Court aptly noted, options to terminate tenures granted by the provisions of a contract or a lease should be strictly construed. (*See, Leighton's Inc. v Century Cir.,* 95 AD2d 681; *see also,* 2 Rasch, NY Landlord & Tenant, Summary Proceedings § 760 [2d ed].) Moreover, since the sublease, including its termination clauses, was drafted by D'Agostino Greenwich Village Corp., petitioner's alter ego, and through whose surrender of the underlying lease forfeiture was purportedly triggered, any ambiguity in the termination clauses should be construed against petitioner. (*See, 151 W. Assoc. v Printsiples Fabric Corp.,* 61 NY2d 732.) With these principles in mind, analysis of the sublease's termination provisions discloses that they did not comprehend the sublessor's ability to effect a termination of the sublease by purchasing the fee and terminating its own prime lease.

The clear intendment of paragraph 46 was to permit the sublessor to avoid liability to the sublessee by permitting it to terminate the sublease if, for any reason "except [the sublessor's] default thereunder", the prime lease were terminated. Paragraph 47, on the other hand, provides for automatic termination of the sublease if the underlying lease is terminated for any reason and is, thus, in conflict with paragraph 46 which excludes termination of the prime lease by reason of the sublessor's default in performance of the underlying lease as a basis for termination of the sublease.

Petitioner argues that paragraph 47 controls, but that argument reads paragraph 46, which limits the sublessor's right to terminate, out of the sublease. Since the two provisions are in conflict and cannot be reconciled the ambiguity should be resolved in favor of respondents. (*See, 151 W. Assoc. v Printsiples Fabric Corp., supra,* at p 734.) For that reason, paragraph 47 cannot be read to negate the provisions of paragraph 46. Thus, any termination of the prime lease as a result of the sublessor's

---

2. Respondents are estopped from raising the defense of a continued right of occupancy of an "interim multiple dwelling" pursuant to Multiple Dwelling Law, article 7-C, § 281 by virtue of the Loft Board's finding of "no coverage".

default thereunder is excluded as a basis for termination of the sublease. In the circumstances presented, where surrender of the prime lease is a mere subterfuge for invocation of the sublease's forfeiture provisions and part of a strategy to place petitioner in a position to exact a rent increase, default by the sublessor resulting in termination of the underlying lease, which is excluded as a basis for terminating the sublease, should be construed to include surrender of the underlying lease. It should be noted that in the very clause providing for termination, i.e., paragraph 46, the sublessor had covenanted to perform all of the terms of the underlying lease.

Even assuming, however, that paragraph 47 were the only provision in the sublease pertaining to termination, it should not be interpreted as contemplating the sublessor's right, *sua sponte,* to terminate the sublease by purchasing the fee and thereafter to terminate the prime lease. That would be tantamount to providing that the sublessor could terminate the sublease any time it wished, despite the fact that its right to possession of the premises was neither being terminated nor even threatened — hardly a condition to which respondents would have agreed. In construing the terms of a contract, the judicial function is to give effect to the parties' intentions. (*See, Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285; 22 NY Jur 2d, Contracts, § 196, at 37-38.) "Contracts are made by people about real transactions and they should be interpreted in accordance with their reasonable intentions at the time." (*Rosenthal Jewelry Corp. v St. Paul Fire & Mar. Ins. Co.,* 21 AD2d 160, 167.) Thus, when the literal meaning of contract language cannot reasonably have reflected the parties' contemplation, the language must be given its reasonable, rather than literal application. (*See also, City of Buffalo v Strong & Co.,* 304 NY 132, 138.)

Here, petitioner argues that paragraph 47 be given an interpretation which, although embraced within its literal meaning, nevertheless is contrary to common sense and the realities of the situation. After taking possession in December 1972 under a lease having an effective term of 20 years, respondents made extensive renovations of the premises. In such circumstances, it surely could not have been within the parties' contemplation that the lease was terminable at any time, at the sublessor's option, merely by the purchase of the fee and termination of the prime lease. Nor, contrary to Appellate Term's finding, is there an issue of fact as to the intended application of the termination provisions. Significantly missing from Mr. D'Agostino's affidavit is any allegation that the parties agreed to, or even dis-

cussed, the possible acquisition of fee title and termination of the sublease by surrender of the underlying lease. His averment that "a great deal of thought was given to [that] possibility" does not raise such an issue. In this connection respondents state that they were assured that they had a secure 20-year lease. If the parties had contemplated the right of the sublessor to terminate the sublease by purchasing the fee and terminating the prime lease, specific language to that effect could have been employed.

The conclusion that, as a matter of law, the parties to the sublease did not actually contemplate, at the time of its execution 10 years before, that the sublease would embrace within its terms the right of the sublessor to terminate the sublease by purchasing the fee and itself terminating the prime lease is reinforced by the principle that every contract contains an implied obligation by each party to deal fairly with the other and to eschew actions which would deprive the other party of the fruits of the agreement. As stated in *Grad v Roberts* (14 NY2d 70, 75): "Persons invoking the aid of contracts are under implied obligation to exercise good faith not to frustrate the contracts into which they have entered. The rule is grounded in many cases that in every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part". (*See also, Kirke La Shelle Co. v Armstrong Co.,* 263 NY 79; 22 NY Jur 2d, Contracts, §§ 201, 343, at 47-48, 230.)

Thus, the sublessor could not escape its obligations to respondents under the sublease by its own voluntary termination of the prime lease. The sublessor's obligation not to impair its own performance of the sublease also prohibits the purported termination of the sublease by its alter ego, petitioner, particularly in light of its motives. The application of the termination provisions in the circumstances here presented is so antithetical to the sublessor's implied obligations under the sublease that the conclusion is inevitable that they could not reasonably have been intended to authorize such termination.

Accordingly, the order of the Appellate Term, First Department, entered July 2, 1984, which modified an order of the Civil Court (Saxe, J.), entered February 10, 1983, to deny respondents' cross motion for summary judgment dismissing the petition and otherwise affirmed said order, should be modified, on the law, with costs and disbursements, to grant the cross motion and, except as thus modified, affirmed.

BLOOM, MILONAS and ELLERIN, JJ., concur.

Order, Appellate Term, First Department, entered on July 2, 1984, unanimously modified, on the law, to grant the cross motion and, except as thus modified, affirmed. Appellants shall recover of petitioner-respondent $75 costs and disbursements of this appeal.