[671 NYS2d 746]

ROBERT MILLER et al., Appellants, v STEVEN D. ALMQUIST et al., Respondents.

First Department, April 28, 1998

## APPEARANCES OF COUNSEL

*Victor M. Metsch* of counsel, New York City (*Steven A. Kirschenbaum* and *Thomas V. Juneau, Jr.,* on the brief (*Hartman & Craven, L. L. P.,* attorneys), for appellants.

*Patricia C. Mandel* of counsel, New York City (*Mandel & Mandel, L. L. P.,* attorneys), for respondents.

## OPINION OF THE COURT

TOM, J.

This case arises out of a proposed sale of a cooperative unit between next door neighbors. The plaintiff buyers live in apartment 4S at 150 East 69th Street in Manhattan. The defendant sellers lived in apartment 4T (the Premises). The buyers anticipated buying the sellers' apartment with the goal of consolidating the two apartments into a single living unit for their growing family.

On February 25, 1997, the parties entered into a contract of sale for the Premises at a purchase price of $545,000 to be paid in cash. The contract provided for a 10% down payment and contained no financing contingency clause. However, the buyers did not represent that they would not seek financing, and they did apply for a loan. The contract specified a closing date of April 1, 1997 but did not specify that time was of the essence. At the time of contract, the buyers paid a down payment of $54,500 to be held in escrow by the sellers' attorney. The contract further provided that in the event the buyers defaulted, the sellers would be permitted to terminate the contract and the buyers would forfeit their down payment.

The cooperative Board of Directors approved the sale on March 25, 1997, six days prior to the scheduled closing date. Thereafter, the buyers experienced delays arising from loan clearance and documentation. By letter dated March 31, 1997, the buyers' attorney sought an adjournment of the closing until April 16, 1997, subject to the availability of the cooperative's transfer agent. As a consequence, neither party appeared on April 1st. By responsive letter dated April 2, 1997, the sellers' attorney agreed to the adjournment, but claimed that time was now of the essence.

On April 14, 1997, the buyers' attorney contacted the lender to arrange for apportionment of the proceeds for the April 16th closing. For the first time, the lender's attorney asked how certain tax liens would be resolved. The buyers' attorney contacted his client, who indicated that the liens had been satisfied years ago, but that they could not immediately locate canceled checks evidencing satisfaction of the liens. The lender required proof of payment by the next morning, April 15th, indicating that otherwise the April 16th closing would have to be adjourned pending receipt of proof. The buyers received a faxed copy of the satisfaction of lien from the New York State Department of Taxation and Finance. This documentation had been sent to the buyers' office at 5:22 P.M. on April 14th, followed by written confirmation dated April 15th. The clients provided the documentation to their attorney, who then provided it to the lender enclosed with a letter faxed to the lender's attorney at 11:24 A.M. on April 15th. This evidence of satisfaction was acceptable to the lender. However, a closing could not be scheduled with the lender at this time for the following day due to the delay in obtaining the satisfaction. The lender indicated that it was available to close on April 18th.

Also on April 15th, several communications went back and forth between the buyers and sellers. Initially, the buyers' attorney contacted the sellers' attorney, and indicated that the buyers' lender had just informed the buyers about the results of the lien search. This was followed by a faxed letter at 5:58 P.M. to the sellers' attorney confirming a prior conversation that the buyers could not attend the closing scheduled for the next day. This letter also confirmed the buyers' willingness to pay the sellers $300 per day for maintenance and opportunity cost, which counsel characterized as being well in excess of that calculated by the sellers' attorney. The buyers' attorney initially indicated that the buyers would be able to close in seven days, and asked for a response.

The buyers did not appear on April 16, 1997 for the scheduled closing. By certified mail dated April 16, 1997, the sellers' attorney informed the buyers' attorney that as a consequence of the buyers' failure to appear that day, and the prior declaration that time was of the essence, the buyers were in default and the down payment would be delivered to the sellers. By faxed letter dated April 16, 1997, at 12:58 P.M., the buyers' attorney now sought to confirm the assurance given in a prior conversation that the buyers were now ready, willing and able to close on April 18, 1997, again subject to the availability of

the cooperative's transfer agent. By letter faxed at 5:26 P.M. on April 16, 1997, the buyers' attorney confirmed a conversation with the sellers' attorney that the sellers would not appear on April 18th and had declined to agree to any other date. By letter faxed and hand delivered on April 18th, the buyers' attorney informed the sellers' attorney that a closing date was reserved for April 23, 1997 since this was the first available date for the cooperative's transfer agent. This letter also advised the sellers that the time of the essence clause had not been contemplated in the contract and constituted only a unilateral declaration by the sellers' attorney. By a second letter that day, faxed at 5:01 P.M., the buyers' attorney again confirmed that his clients were ready, willing and able to close on April 23rd, but that the sellers had stated an unwillingness to attend. By letter dated April 21, 1997, the buyers' attorney rejected the default notice and again confirmed his clients' willingness to close; the letter demanded that the down payment remain escrowed. The same letter also indicated that the buyers had been willing to make several concessions to keep the deal alive, that the sellers had suffered no prejudice, and that the sellers' attorney would be acting in bad faith if the closing did not take place. By an April 22, 1997 letter, the sellers' attorney then contacted the transfer agent to cancel the April 23, 1997 reservation. The buyers warrant that they appeared for closing on April 23, 1997 with all necessary documentation and a check for $490,000.

The buyers commenced this action on or about April 27, 1997, seeking to enjoin the sellers from terminating the contract, from implementing a forfeiture of the down payment and from contracting to sell the apartment to any other party. The sellers cross-moved for summary judgment dismissing the complaint on the basis that the contract already had been terminated, after which the buyers also sought summary judgment. By order and judgment entered June 5, 1997, Supreme Court, New York County (Harold Tompkins, J.), noting the absence of a financing contingency clause and finding that the sellers had made time of the essence, granted the sellers' cross motion for summary judgment dismissing the complaint. Plaintiff buyers appeal and we now reverse.

We have long been guided by the rule that "every contract contains an *implied obligation* by each party to deal fairly with the other and to eschew actions which would deprive the other party of the fruits of the agreement" (*Greenwich Vil. Assocs. v Salle*, 110 AD2d 111, 115; *Gross v Neuman*, 53 AD2d 2, 5), in

furtherance of the covenant of good faith implied in every contract (*Dalton v Educational Testing Serv.*, 87 NY2d 384).

When a contract for sale of real property does not specify that time is of the essence, either party is entitled to a reasonable adjournment of the closing date (*3M Holding Corp. v Wagner*, 166 AD2d 580; *Sohayegh v Oberlander*, 155 AD2d 436). In granting an adjournment, the other party may unilaterally impose a condition that time be of the essence as to the rescheduled date (*Charchan v Wilkins*, 231 AD2d 668; *Liba Estates v Edryn Corp.*, 178 AD2d 152; *Sohayegh v Oberlander, supra*). The effectiveness of this condition, though, is contingent on the specificity of the notice and on the reasonableness of the time period (*Zev v Merman*, 73 NY2d 781). The notice in this case was sufficiently clear and unequivocal. The question is whether it afforded the buyers a reasonable time to close. What constitutes a reasonable time to close depends on the facts and circumstances of the particular case. Among the factors to be considered are the nature and object of the contract, the previous conduct of the parties, the presence or absence of good faith, the experience of the parties and the possibility of hardship or prejudice to either one, as well as the specific number of days provided for the performance (*Zev v Merman, supra*). Reasonableness in this case turns on whether the postnotice time period provided a reasonable time period in which to close, especially when the time of the essence provision was unilaterally made by the sellers after the buyers had selected a very short adjourned closing date (*compare, Liba Estates v Edryn Corp., supra*).

We initially note that the time period from the initial scheduled closing date of April 1st to the time when the buyers were ready, willing and able to close was very short. From the receipt of the time of the essence letter dated April 2, 1997 to the April 15th request for an adjournment was a matter of days, and this entire period was only six weeks after the contract was signed. The very brevity of the additional adjournment—two days for the buyers' purposes—supports the conclusion that the few days initially allowed were not reasonably sufficient to achieve the buyers' purpose. Parenthetically, although the buyers requested 15 days for the initial adjournment, they reasonably could have requested a longer period. Insofar as time was not of the essence for the contract's law date, and in the absence of discernible prejudice, the sellers could not have rejected a moderately longer adjournment period. A moderately longer adjournment period, as it turns out,

would have avoided the very problem that arose in this case. The delay was occasioned only by the usual sort of documentation glitch that is not uncommon in residential closings. If the sellers had extended the usual courtesies under these circumstances, there is every indication that the buyers, after the very minor adjournment sought, would have presented a check for the entire purchase price, and neighbors could have parted as friends.

The previous conduct of the parties, as well as the time periods involved, do not reveal extensive delays or acts of bad faith on behalf of the buyers. The buyers' attorney explained the delay and communicated regularly with the sellers' counsel; his explanation, which is a reasonable one, is well documented in the record. By April 14th, counsel knew that the financing was already approved; he was calling in regard to apportioning the check. The delay was merely to finalize the documentation required in connection with the lender's lien search and to reschedule for those parties appearing in a representative capacity. Hence, the sellers were assured that the sale would close in the immediate future.

The evidence in this case clearly shows that the buyers were not experienced in the real estate field. They suffered hardship as a result of their inability to close under the facts and circumstances of this case. They sought to acquire the next door apartment to break through so as to make adequate room for their growing family, which included two young children (ages two and four years old), and the wife's mentally retarded sister, whom they expected to move in with them. Because of the short delay, the buyers have lost not only their opportunity to purchase the adjacent apartment, but also their $54,500 deposit. Conversely, the sellers have failed to show how the delay of a few days would have prejudiced them, since they would have received the all-cash deal they had bargained for, as well as several thousand dollars in expenses dating back to April 1, 1997. It is undisputed that the sellers subsequently sold the premises to a third party at a higher sale price.

Taking all of these factors into consideration, we cannot conclude that the time allotted in the time of the essence letter in response to a short adjourned closing date chosen by the buyers was reasonable so as to inflexibly bind the buyers to an April 16th closing date.

Since there are no bright-line criteria establishing the reasonableness of a particular time period, and insofar as the nuances of each case are different, relevant precedents

outcomes are not necessarily dispositive. Certain decisions cited by the sellers are, in any event, clearly distinguishable. The sellers claim that our decision must be governed by our ruling in *Beth Equities v Silgo Greenwich Assocs.* (223 AD2d 367, *lv denied* 88 NY2d 802). However, that case was entirely different. In *Beth Equities*, the seller made clear from the beginning that closing had to occur by a date certain because of a related Federal Deposit Insurance Corporation sale. The contract gave some flexibility as to the law date—which would be selected at the seller's option—but did specify the outer time limits. Nevertheless, there were several adjournments entailing lengthy time periods, partially caused by the buyer's failure to secure financing. Although the contract lacked a financing contingency clause, that fact was not dispositive. Rather, our analysis turned on the pattern of the buyer's conduct, including a last-minute attempt to postpone closing by erroneously asserting the seller's nonperformance of a condition which, in fact, had been satisfied. The seller declared the buyer in default when, after these several adjournments following the time of the essence notice, financing still had not been secured. However, our affirmance recognized that the contract itself basically deprived the buyer of any capacity to extract the adjournments in issue and that the seller's continuous good faith underscored the buyer's repeated bad faith, factors manifestly not present herein.

In the various cases claimed by the sellers to support their position (*see, Zev v Merman, supra; Woodwork Display Corp. v Plagakis*, 137 AD2d 809, *lv denied* 72 NY2d 806; *76 N. Assocs. v Theil Mgt. Corp.*, 132 AD2d 695, *lv denied* 70 NY2d 612; *Palmiotto v Mark*, 145 AD2d 549, *lv denied* 74 NY2d 608; *Knight v McClean,* 171 AD2d 648; *Liba Estates v Edryn Corp., supra*), there were significant warnings during the course of unreasonable delays that the delays had to end. The time periods allowed in tandem with the conduct of the parties factored into the determination whether the time to which the delaying party would be held was unreasonable. By sharp contrast, it was unreasonable under the unusual circumstances of the present case for the sellers, having unilaterally declared time to be of the essence, to have held the buyers to the very limited time period in issue, especially since time had not been made of the essence when the buyers had selected the date only days before (*compare, Charchan v Wilkins, supra* [the sellers, who were in breach, had selected closing date themselves two months before; in that context, the 11 days between the

time of the essence notice and the scheduled closing date was reasonable]). Under the present circumstances, in which only a single adjournment had been sought during a two-week period, it would be unreasonable to inflexibly hold the buyers to that date on the basis that the buyers had made the initial selection (*cf., Liba Estates v Edryn Corp., supra*).

Accordingly, the order and judgment (one paper) of Supreme Court, New York County (Harold Tompkins, J.), entered June 5, 1997, granting defendants' motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs, the motion denied, the complaint reinstated and, upon a search of the record, summary judgment should be granted to plaintiffs to the extent of directing that plaintiffs recover $54,500 plus interest from defendants. The Clerk is directed to enter judgment accordingly.

MILONAS, J. P., ROSENBERGER and ELLERIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered June 5, 1997, reversed, on the law, without costs, the motion for summary judgment dismissing the complaint denied, the complaint reinstated and, upon a search of the record, summary judgment granted to plaintiffs to the extent of directing defendants to return $54,500 plus interest to plaintiffs.