■ STATE OF CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Appellant-Respondent, v SHEARMAN & STERLING, Respondent-Appellant. [703 NYS2d 448] —Order, Supreme Court, New York County (Beatrice Shainswit, J.), entered February 4, 1999, which granted defendant's motion to dismiss the complaint, pursuant to CPLR 3211 (a) (1), (5) and (7), to the extent of dismissing the third and fourth causes of action, unanimously modified, on the law, to grant the motion to the further extent of dismissing the first and second causes of action, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint in its entirety.

The complaint alleges that plaintiff engaged a non-party financial institution (Equitable), pursuant to a contract (the Correspondent Agreement), to originate, negotiate and close commercial property loans for post-closing assignment to plaintiff. In 1993, plaintiff committed to purchase from Equitable a prospective loan to a New York borrower after the closing of such loan, pursuant to the Correspondent Agreement, subject to the satisfaction of contractual conditions. Equitable retained defendant law firm to represent it, as lender, in negotiating and closing the loan. The loan closed in November 1994, and was assigned by Equitable to plaintiff pursuant to the Correspondent Agreement the following month. When the borrower subsequently defaulted, it was discovered that, under the terms of the promissory note evidencing the loan, which defendant had prepared, plaintiff was entitled to an acceleration fee of only approximately $1.1 million, rather than the fee of approximately $9.1 million to which plaintiff would have been entitled if the note had been drafted in conformity with the standard form of note plaintiff had approved for use in loans to be assigned to it pursuant to the Correspondent Agreement. Based on these allegations, plaintiff is suing defendant for legal malpractice and breach of contract.

The first two causes of action, which plaintiff purports to assert as assignee of Equitable's claims against defendant, should have been dismissed. The motion court correctly determined that the instrument by which Equitable assigned the loan documents to plaintiff, which provided that all of Equitable's "right,

title and interest in, to and under the [loan] documents" was being assigned to plaintiff, did not convey to plaintiff any malpractice claims against defendant (*see, Fox v Hirschfeld,* 157 App Div 364, 368; *see also, Royal Mtge. Corp. v Federal Deposit Ins. Corp.,* 20 F Supp 2d 664, 666-668, *affd* 194 F3d 389; *cf., Banque Arabe et Internationale D'Investissment v Maryland Natl. Bank,* 57 F3d 146, 152). However, we disagree with the motion court's conclusion that the Settlement Agreement into which plaintiff and Equitable entered in 1997 effectively assigned to plaintiff any malpractice claims against defendant, as the agreement purported to do, since Equitable had no viable claims against defendant when the Settlement Agreement was executed. The complaint itself establishes that, upon Equitable's assignment of the loan to plaintiff pursuant to the Correspondent Agreement in December 1994, Equitable received the full benefit of its bargain with plaintiff and divested itself of any further interest in the rights of the holder of the loan documents, including the potential acceleration fee under the promissory note, the reduction of which is the sole injury allegedly caused by the alleged malpractice in this case. Since injury is an essential element of a cause of action for legal malpractice (*see, e.g., IMO Indus. v Anderson Kill & Olick,* 267 AD2d 10, 11), the elimination of any injury to Equitable upon the assignment of the loan extinguished any malpractice claims Equitable may have had against defendant related to the loan, and Equitable could not thereafter assign such defunct claims.

The motion court correctly dismissed the third and fourth causes of action, which purport to be plaintiff's own original claims against defendant. The complaint and the undisputed documentary evidence establish, as a matter of law, that there was no relationship between plaintiff and defendant so close as to approach that of privity (*see, Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood,* 80 NY2d 377, 382). The only contact between defendant and plaintiff alleged to have occurred prior to the closing of the loan is defendant's August 1994 letter to plaintiff's California counsel, which transmitted drafts of loan documents for plaintiff's counsel's review. Although plaintiff contends that this letter negligently misrepresented the nature of the changes incorporated in the enclosed draft documents from the standard forms previously approved by plaintiff, the facts that the letter was sent to plaintiff's own attorney, was accompanied by the draft documents to which it referred, and requested that plaintiff's attorney "approve" the drafts, negate any implication that defendant either understood that plaintiff would rely on the statements in the letter or was

inviting such reliance (*see, Mason Tenders Dist. Council Pension Fund v Messera*, 4 F Supp 2d 293, 305; *LNC Invs. v First Fid. Bank*, 935 F Supp 1333, 1351; *cf., Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, supra*, at 385).

Also without merit is plaintiff's theory that it was an intended third-party beneficiary of defendant's contract to provide legal·services to Equitable, in that it is fully rebutted by the provision of the Correspondent Agreement entitling plaintiff to have the documentation of each loan approved by its own counsel. The third-party beneficiary theory is also untenable on the ground that Equitable was potentially able to recover for malpractice by defendant in the event the loan ultimately were not assigned to plaintiff pursuant to the Correspondent Agreement, and there is no contention that the contract between defendant and Equitable otherwise clearly evidenced an intent to permit enforcement by plaintiff (*see, Fourth Ocean Putnam Corp. v Interstate Wrecking Co.*, 66 NY2d 38, 45). In closing, we note that, even if the complaint were otherwise legally sufficient, we would have dismissed both causes of action for breach of contract as redundant of the malpractice causes of action, there being no allegation that defendant promised to achieve any specific result for either Equitable or plaintiff (*see, e.g., IMO Indus. v Anderson Kill & Olick, supra*, at 12, citing *Senise v Mackasek*, 227 AD2d 184, 185). Concur—Nardelli, J. P., Tom, Wallach and Rubin, JJ.