OPINION OF THE COURT
Wesley, J.
Plaintiff California Public Employees’ Retirement System (CalPERS) is the largest public pension and health system in the United States. In 1988, CalPERS and Equitable Real Estate Investment Management, Inc. entered a “Correspondent Agreement for Commercial Property Loans.” Under the Correspondent Agreement, Equitable originates and closes commercial property loans for sale and assignment to CalPERS. Equitable is responsible under the Correspondent Agreement for retaining counsel to provide advice and services in connection with the loans.
In August 1993, CalPERS agreed to purchase a $23,300,000 long-term commercial loan that Equitable proposed to make to a New York borrower, Nathan L. Serota. After receiving CalPERS’ commitment approving the loan, Equitable in turn executed a commitment approving Serota’s application. Serota subsequently assigned the commitment to Sersons Corp. Equit *432 able retained defendant Shearman & Sterling as counsel in negotiating and closing the Sersons loan. CalPERS and Equitable had developed standard form loan documents, including a promissory note that contained a prepayment and acceleration penalty, for use in connection with the loan transactions under the Correspondent Agreement. CalPERS alleges that Equitable asked Shearman & Sterling to incorporate the agreed-upon standard form note into the loan documents. At Equitable’s request, Shearman & Sterling prepared the documents and sent a draft note to CalPERS and its counsel. In its cover letter to CalPERS’ counsel, Shearman & Sterling indicated that the documents enclosed included Equitable’s standard loan forms, which had been black-lined to reflect changes required by New York law and those negotiated by Sersons; one of the black-lined provisions was the acceleration clause of the loan. CalPERS made no objection to the loan documents.
At the closing in November 1994, Sersons executed the note and delivered it to Equitable. A month later, Equitable assigned the note by an instrument entitled “Omnibus Assignment of Loan Documents.” The instrument purported to assign all of Equitable’s “right, title and interest in, to and under the [loan] documents” to CalPERS. The assignment was made “without recourse to, and without covenant or warranty (express or implied) by, Assignor, except as set forth in” the Correspondent Agreement.
Subsequently, Sersons defaulted and CalPERS accelerated the loan. CalPERS asserts that only then did it discover that the note provided for an acceleration fee of approximately $1.1 million, rather than $9.1 million had the note been drafted in conformity with the standard CalPERS note. In March 1997, Sersons paid CalPERS the $1.1 million.
Before commencing this lawsuit, CalPERS and Equitable entered into a Settlement Agreement whereby Equitable paid Ca]PERS $400,000.* The Settlement Agreement noted the previous Omnibus Assignment and declared that both Equitable and CalPERS had intended to include in the assignment all possible claims relating to the note “including without limitation all causes of action * * * relating to professional malpractice, including without limitation all causes of action *433 against, and rights to sue, Shearman & Sterling for negligence and breach of contract.” Pursuant to the Settlement Agreement, Equitable further assigned to CalPERS all of its rights “to the extent * * * not previously assigned, arising from or relating in any manner whatsoever to the Sersons loan transaction, including without limitation all Equitable’s causes of action against, and rights to sue, Shearman & Sterling for negligence and breach of contract.”
CalPERS, as the assignee of Equitable’s rights under the loan documents, then commenced this action against Shear-man & Sterling, asserting two causes of action for professional negligence and breach of contract. CalPERS also alleged that its relationship with the law firm was “so close as to approach that of privity of contract” to permit it to raise direct claims of negligence and breach of contract against Shearman & Sterling. Lastly, CalPERS claimed third-party beneficiary status under the Equitable and Shearman & Sterling contract to sustain its direct claims against the law firm.
Shearman & Sterling moved to dismiss the complaint for failure to state a cause of action. Supreme Court granted the motion in part, dismissing only the direct causes of action based on its conclusion that CalPERS had not alleged facts sufficient to show either that CalPERS had a relationship approaching privity with Shearman & Sterling or that CalPERS was the intended third-party beneficiary of Shearman & Sterling’s contract with Equitable. The court noted that although the language in the Omnibus Assignment was legally insufficient to effect an assignment of Equitable’s claims, the specific language in the subsequent Settlement Agreement did assign Equitable’s claims to CalPERS.
The Appellate Division dismissed the complaint in its entirety (269 AD2d 221). The Court agreed that the language in the Omnibus Assignment did not transfer Equitable’s claims against Shearman & Sterling to CalPERS but rejected the contention that the Settlement Agreement nevertheless assigned those claims to CalPERS. The Appellate Division noted that, upon assignment of the loan to CalPERS, Equitable received the full benefit of its bargain with CalPERS. The Court concluded that “[s]ince injury is an essential element of a cause of action for legal malpractice * * * the elimination of any injury to Equitable upon the assignment of the loan extinguished any malpractice claims Equitable may have had against defendant related to the loan, and Equitable could not thereafter assign such defunct claims” (supra, at 222). We now affirm.
*434 As an initial matter, we agree with the courts below that the allegations in the complaint are insufficient to establish that CalPERS and Shearman & Sterling had a relationship so close as to approach that of privity. We have long held that “before a party may recover in tort for pecuniary loss sustained as a result of another’s negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity” (Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, 80 NY2d 377, 382 [citing Ossining Union Free School Dist. v Anderson LaRocca Anderson, 73 NY2d 417, 424; Credit Alliance Corp. v Andersen & Co., 65 NY2d 536]). The evidence must demonstrate “(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance” (Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, supra, 80 NY2d, at 384 [citing Credit Alliance Corp. v Andersen & Co., 65 NY2d 536, 551, supra]).
The only direct contact between Shearman & Sterling and CalPERS prior to the closing of the Sersons loan is a letter Shearman & Sterling sent to CalPERS asking for review and approval of the note by CalPERS and its counsel. Moreover, Shearman & Sterling provided CalPERS with a black-lined copy of the standard form note, indicating the changes that it had made so that the note would conform to New York law and the borrower’s demands. CalPERS cannot assert that it relied on Shearman & Sterling’s letter when it reserved the right of final approval of the loan documents for itself and its counsel, and failed to object. Thus, the complaint and the documentary evidence fail to establish that Shearman & Sterling knew that CalPERS would and did rely on the note it prepared without reviewing it and that CalPERS’ reliance was premised on conduct by Shearman & Sterling evincing an understanding that CalPERS would do so.
We also reject CalPERS’ argument that it was an intended third-party beneficiary of Shearman & Sterling’s contract to provide legal services to Equitable. A party asserting rights as a third-party beneficiary must establish “(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than *435 incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost” (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 336; see also, Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d 38, 44).
There certainly was a valid and binding contract between Equitable and Shearman & Sterling for the law firm’s services in the Sersons loan transaction. However, contrary to CalPERS’ assertion, Equitable did not retain Shearman & Sterling for CalPERS’ benefit. The Correspondent Agreement explicitly declares that the agents of Equitable act independently and are not agents for CalPERS. In addition, the agreement acknowledges that CalPERS’ counsel (not Shearman & Sterling) must approve all closing documents. Although the correspondent program was designed for the purpose of allowing CalPERS to invest in long-term commercial real estate loans obtained by Equitable, CalPERS and Equitable did not share at all times the same interests. Shearman & Sterling was retained to assist Equitable as its counsel in meeting the requirements of the Correspondent Agreement without harming Equitable’s interests under New York law. It had no corresponding duties to CalPERS, a party on the opposite side of the Correspondent Agreement.
Having determined that CalPERS has no direct causes of action against Shearman & Sterling, we turn to its remaining claims as Equitable’s assignee. CalPERS contends that the Omnibus Assignment was sufficient to transfer the entirety of Equitable’s “bundle of rights” in the Sersons loan transaction, including the right to assert any claims Equitable had against Shearman & Sterling for legal malpractice. CalPERS maintains that the use of the word “all” in the Omnibus Agreement evinces an intention by Equitable to transfer all claims, including then-unknown but accrued claims against Shearman & Sterling. CalPERS’ reliance on the Omnibus Assignment’s use of the word “all” to include all of Equitable’s claims against Shearman & Sterling is misplaced.
The Omnibus Assignment refers only to rights and interests under the loan documents (including the promissory note) between Equitable and Sersons and does not refer to the overall loan transaction (compare with Banque Arabe et Internationale D'Investissement v Maryland Natl. Bank, 57 F3d 146, 152 [2d Cir]). The Omnibus Assignment transferred every right of action Equitable had against Sersons growing “out of the receipt of the notes and the refusal to pay the share thereof’ (Allen v *436 Brown, 44 NY 228, 234). The assignment did not include a cause of action arising outside the loan documents themselves (Fox v Hirschfeld, 157 App Div 364, 368 [1st Dept]).
The claim alleged here — that Shearman & Sterling prepared a defective note by materially altering the prepayment and acceleration provisions of the standard form note and the terms of the commitment — does not arise from the note itself or from the loan documents. Rather, CalPERS’ claim against Shearman & Sterling is premised on the firm’s failure to prepare loan documents for Equitable that complied with the terms of the Correspondent Agreement. Thus, while “all” of Equitable’s rights to and under the loan documents were assigned to CalPERS, “all” in this case does not include the right to assert Equitable’s claims, whatever they may be, against Shearman & Sterling arising from the firm’s failure to observe the specifications of the Correspondent Agreement (see, Allen v Brown, 44 NY 228, 233, supra [“(t)he transfer of a note or draft * * * carries with it a claim for money had and received, arising out of the transaction for which the note or draft was given”]).
CalPERS’ allegation that the Settlement Agreement operated as an assignment of malpractice claims against Shearman & Sterling must fail as well. The Settlement Agreement’s residual assignment provision specifically includes all of Equitable’s claims against Shearman & Sterling for negligence and breach of contract. Upon executing the Omnibus Assignment, CalPERS paid Equitable in full for the part it played in the negotiation and sale of the Sersons loan. There was no discount to Equitable in the value of the Sersons loan notwithstanding the alleged patent defect in the acceleration clause. Thus, when Sersons defaulted on the note, Equitable, having already assigned the note to CalPERS, no longer had any rights to, or under, the note. Equitable had been paid. The reduced acceleration fee caused no injury to Equitable and thus Equitable had no malpractice claim against Shearman & Sterling to assign.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Smith, Levine and Ciparick concur; Judge Rosenblatt taking no part.
Order affirmed, with costs.

 CalPERS concedes that Equitable’s settlement payment has nothing to do with this litigation. The sum was paid by Equitable in the interest of “preserving and advancing its relationship with [CalPERS]” (Appellant’s Reply Brief, at 22, n 13).