425 F.3d 119
 SUBARU DISTRIBUTORS CORP., Plaintiff-Appellant,
v.
SUBARU OF AMERICA, INC., Fuji Heavy Industries Ltd., General Motors Corp., Saab Automobile AB and Saab Cars USA, Inc., Defendants-Appellees.
Docket No. 04-3598-CV.
 United States Court of Appeals, Second Circuit.
 Argued: February 3, 2005.
 Decided: September 21, 2005.
 
 Dale A. Schreiber, Proskauer Rose LLP (David N. Ellenhorn and Steven H. Holinstat, on the brief), New York, New York, for Subaru Distributors Corp., Plaintiff-Appellant.
 Jeffrey D. Herschman, Piper Rudnick LLP, (Douglas A. Rappaport, New York, New York; Lewis A. Noonberg and F. Martin Dajani, Washington, DC; and Deana L. Cairo, Baltimore, Maryland, on the brief), Baltimore, Maryland, for Subaru of America, Inc., Defendant-Appellee.
 Dwight J. Davis, King & Spalding, LLP, New York, New York, for General Motors Corp., Saab Automobile AB, and Saab Cars USA, Inc., Defendants-Appellees.
 Daniel L. Goldberg, Bingham McCutchen LLP (Mark M. Elliott and William F. Benson, on the brief), Boston, MA, for Fuji Heavy Industries Ltd., Defendant-Appellee.
 John J. Sullivan, Carl J. Chiappa, and Colm A. Moran, Kirkpatrick & Lockhart LLP, New York, New York and Los Angeles, California, for amici curiae Association of International Automobile Manufacturers, Inc. and the Alliance of Automobile Manufacturers, Inc.
 Before: WALKER, Chief Judge, HALL, and JOHN R. GIBSON,* Circuit Judges.
 GIBSON, Circuit Judge.
 
 
 1
 Subaru Distributors Corp. appeals from the dismissal by the United States District Court for the Southern District of New York (Stephen C. Robinson, District Judge) of its action against Subaru of America, Inc., Fuji Heavy Industries Ltd., General Motors Corp., Saab Automobile AB, and Saab Cars USA, Inc. Subaru Distributors brought the suit to prevent the defendants from selling "rebadged" cars, that is, cars manufactured from designs also used for Subaru models, but which defendants allegedly propose to sell under the Saab trademark. The district court dismissed the complaint for failure to state a claim. We affirm the district court's dismissal of the complaint.
 
 
 2
 The complaint alleged that since 1969, Subaru of America has had a contract with Fuji, the manufacturer of the Subaru vehicles, granting Subaru of America the exclusive right to distribute certain Subaru products in the United States. In 1975 Subaru of America entered a Distribution Agreement with Subaru Distributors, granting Subaru Distributors the exclusive right to distribute Subaru vehicles, parts, and accessories in New York state and northern New Jersey. Since those early days, the relationship between these three parties has grown complicated and vexed as Fuji acquired part, then all, of the stock of Subaru of America; a rival manufacturer, General Motors, acquired approximately 20% of Fuji's stock; and GM acquired 100% of the stock of Saab, the Swedish vehicle manufacturer. After GM acquired its stake in Fuji, GM and Fuji announced in 2000 that they had entered a "technical alliance." In 2003, GM and Saab announced what the complaint describes as a "Re-Badging Plan," under which Fuji would manufacture vehicles to be sold as the Saab 9-2. Subaru Distributors objects to the rebadging plan because the new Saab 9-2 is to be based on the same design as the Subaru Impreza WRX Wagon and Sport Wagon, which Fuji manufactures in the same plant where the Saab 9-2 will be built. According to the complaint, under the rebadging plan, the Saab 9-2s and their related parts and accessories are to be sold through the existing Saab distribution network in Subaru Distributors' geographic territory. In short, Fuji agreed to sell Saab an automobile substantially similar to the Subaru wagons that would allow Saab to compete against Subaru in Subaru Distributors' geographic territory. Subaru Distributors alleges that Subaru of America "acquiesced" in the plan.
 
 
 3
 Subaru Distributors brought this suit seeking to enjoin the defendants from selling or taking any action to implement the sale of rebadged Subaru vehicles, parts, and accessories in Subaru Distributors' territory. The complaint also sought compensatory and punitive damages. The complaint set forth claims for breach of contract against Subaru of America; veil-piercing breach of contract against Fuji; tortious interference with contract against Fuji; breach of contract on a third-party-beneficiary theory against Fuji; tortious interference with contract against GM and the Saab defendants; and conspiracy to tortiously interfere with contract against all defendants except Subaru of America. The defendants moved to dismiss the complaint for failure to state a claim.
 
 
 4
 The district court held that the contracts pleaded between Subaru of America and Subaru Distributors did not grant Subaru Distributors exclusive distribution rights to non-Subaru brand vehicles that were not distributed through Subaru of America; inasmuch as the "rebadged" cars were neither branded as Subarus nor distributed through Subaru of America, Subaru Distributors did not plead a breach of the contracts. Subaru Dist. Corp. v. Subaru of Am., Inc., 2004 WL 3220120, at *5-8 (S.D.N.Y. June 1, 2004), amended (June 29, 2004). The district court further held that Subaru Distributors' claim to be a third-party beneficiary of the contract between Subaru of America and Fuji was inconsistent with that contract. Id. at *9-11 ("[Subaru Distributors] is not an intended beneficiary of the Fuji-[Subaru of America] Agreement and therefore lacks standing to make this claim."). Finally, the district court held that Subaru Distributors' tortious-interference-with-contract claims against all the defendants, and other related claims, necessarily failed because the court had already established that the pleaded contracts were not breached by the alleged rebadging. Id. at *9, 11.
 
 I.
 
 5
 We review de novo the district court's dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir.2001). "In order to survive dismissal, a plaintiff must assert a cognizable claim and allege facts that, if true, would support such a claim." Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir.1997). In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint. Internat'l Audiotext Network, Inc. v. AT & T Co., 62 F.3d 69, 72 (2d Cir.1995) (per curiam). We are not obliged to accept the allegations of the complaint as to how to construe such documents, but at this procedural stage, we should resolve any contractual ambiguities in favor of the plaintiff. Id.
 
 
 6
 Although the district court dismissed the breach-of-contract claim against Subaru of America on the ground that the Distribution Agreement and a later Memorandum of Understanding did not cover the sale of non-Subaru-brand vehicles, parts, and accessories that were not distributed through Subaru of America, we do not reach that issue. Instead, we see no reason to go further than the threshold issue of whether Subaru Distributors has alleged that Subaru of America took or will take any action in the sale of the Saab 9-2s, their parts, or accessories that could breach any contractual duty to Subaru Distributors.
 
 
 7
 The complaint does not allege that Subaru of America has taken or will take any part in the distribution of the Saab 9-2s or their parts or accessories. Rather, it alleges only that Fuji will sell these items to GM or the Saab defendants:
 
 
 8
 Under the Re-Badging Plan, Fuji will sell the Re-Badged Impreza Wagons and their related parts and accessories to GM or one or both of the Saab Defendants for resale to authorized Saab dealers in the United States, including those Saab dealers in [Subaru Distributors'] exclusive Territory.
 
 
 9
 The complaint alleges that Subaru of America "acquiesced" in this plan and that it failed to enforce its own contract with Fuji, which the complaint alleges gave Subaru of America the exclusive right to sell Fuji vehicles in the United States.[1]
 
 
 10
 The threshold question is whether anything in the contracts between Subaru of America and Subaru Distributors gave Subaru of America a duty to police Fuji's compliance with the Fuji-Subaru of America contract. Subaru Distributors contends that this duty inheres in Article 2 of the original 1975 Distribution Agreement between Subaru of America and Subaru Distributors. Article 2 states:
 
 
 11
 [Subaru of America] will not grant any wholesale distributorship to any other party nor will it sell directly to any retail dealer who is located in the Territory without [Subaru Distributors'] consent unless or until this Agreement shall have been terminated except as provided in Article 3 hereof.
 
 
 12
 Subaru Distributors does not allege that Subaru of America has granted a distributorship in the protected territory or sold Saab 9-2s to anyone; therefore, the complaint does not allege that Subaru of America has violated Article 2 of the Distribution Agreement.
 
 
 13
 Subaru Distributors relies on Greenwich Village Assocs. v. Salle, 110 A.D.2d 111, 493 N.Y.S.2d 461 (1985),[2] in which the court refused to allow a sublessor to take advantage of a contractual excuse for nonperformance predicated on a contingency the sublessor itself brought about; the court held that a proper reading of the sublease only excused the sublessor for nonperformance in the event of a contingency outside its control. Id. at 462-63. Here, the complaint does not allege that Subaru of America brought about Fuji's sale of the Saab 9-2s to GM or Saab, and so Salle is not controlling here.
 
 
 14
 Subaru Distributors points to nothing that Subaru of America has affirmatively done; instead, it pleads an omission—that Subaru of America has failed to prevent Fuji from selling cars and parts to Saab. Subaru Distributors expressly disavows reliance on any theory that Subaru of America was bound to Subaru Distributors by a fiduciary relationship that would have imposed on Subaru of America a duty to actively enforce its own rights solely in order to protect Subaru Distributors. Subaru Distributors does not explain what in the Distributorship Agreement would impose on Subaru of America a duty to prevent Fuji from acting, and we will not presume such a duty. We conclude that Subaru Distributors has not pleaded a claim for breach of contract against Subaru of America.
 
 II.
 
 15
 Subaru Distributors contends that it is a third-party beneficiary of the contract between Fuji and Subaru of America and is entitled to enforce the exclusive-distribution rights granted under that contract.[3]
 
 
 16
 Under New York law[4] in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party. State of Cal. Pub. Employees' Ret. Sys. v. Shearman & Sterling, 95 N.Y.2d 427, 718 N.Y.S.2d 256, 741 N.E.2d 101, 104 (2000). The New York Court of Appeals has adopted Restatement (2d) of Contracts § 302 as an accurate statement of New York third-party-beneficiary law. Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 495 N.Y.S.2d 1, 485 N.E.2d 208, 212 (1985). Under section 302(1):
 
 
 17
 Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
 
 
 18
 (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
 
 
 19
 (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
 
 
 20
 A contractual requirement that the promisor render performance directly to the third party shows an intent to benefit the third party. See Levin v. Tiber Holding Corp., 277 F.3d 243, 249 (2d Cir.2002) (finding an intended third-party beneficiary where the third party was a direct beneficiary of the promisor's promise and where performance of the promisor's obligations was rendered directly to the third party).
 
 
 21
 "A court in determining the parties' intention should consider the circumstances surrounding the transaction as well as the actual language of the contract." Restatement § 302, Reporter's Note, comment a (citing Cutler v. Hartford Life Ins. Co., 22 N.Y.2d 245, 292 N.Y.S.2d 430, 239 N.E.2d 361 (1968)).
 
 
 22
 Under New York law, dismissal of a third-party-beneficiary claim is appropriate where the contract rules out any intent to benefit the claimant, see State of Cal. Pub. Employees' Ret. Sys., 718 N.Y.S.2d 256, 741 N.E.2d at 104-05; Cole v. Metro. Life Ins. Co. 273 A.D.2d 832, 708 N.Y.S.2d 789, 790 (App.Div.2000), or where the complaint relies on language in the contract or other circumstances that will not support the inference that the parties intended to confer a benefit on the claimant, see First Capital Asset Mgmt., Inc. v. N.A. Partners, L.P., 260 A.D.2d 179, 688 N.Y.S.2d 25, 27 (1999) (dismissing third-party beneficiary complaint where there was no allegation that performance was owed directly to claimant "nor is there an allegation of any contractual language or other circumstances from which an intent to confer a benefit on petitioner could be inferred"); Artwear, Inc. v. Hughes, 202 A.D.2d 76, 615 N.Y.S.2d 689, 693 (1994).
 
 
 23
 Certain provisions in the 1969 Fuji-Subaru of America contract strongly suggest that the two parties to the contract intended the contract to concern and to benefit only themselves. For instance, the recital of the purpose of the agreement states that the agreement is meant "to set forth the functions and responsibilities of the parties hereto" and fails to mention any purpose of benefitting Subaru Distributors or anyone else. The contract contains an anti-assignment clause and an arbitration clause that applies only to the parties. The anti-assignment clause suggests an intent to limit the obligation of the contract to the original parties. A clause requiring arbitration of disputes that does not include third parties suggests the parties to the contract did not envision that third parties would be in a position to bring suit under the contract. However, we need not consider whether these clauses entirely preclude the idea of a third-party beneficiary, since we conclude that the complaint relies on contractual language which cannot support an inference that the parties intended to benefit Subaru Distributors.
 
 
 24
 Subaru Distributors contends that two provisions, Articles 2(1) and 11(1), of the Fuji-Subaru of America contract demonstrate an intent to benefit Subaru Distributors by assuring it of the exclusive right to distribute the products in its territories. Article 2(1) grants to Subaru of America
 
 
 25
 an exclusive right to purchase from Fuji any or all of the Products [defined as the Subaru 360 and 1000 series of vehicles, their successor models, and their spare parts and accessories] and distribute and resell them within the Territory subject to the restrictions hereinafter provided for. [Subaru of America] shall be the exclusive distributor for the Territory, which shall mean Fuji shall not sell to any other person or company in the Territory except as specified in Article 2 Paragraph 2 of this Agreement.
 
 Article 11(1) states:
 
 26
 [Subaru of America] shall appoint within the Territory qualified sub-distributors and dealers in such number as [Subaru of America] deems reasonably necessary to achieve an efficient sales network in the Territory. Appointment of sub-distributors and dealers shall be periodically reported to Fuji in writing.
 
 
 27
 Subaru Distributors contends that the requirement in the Fuji-Subaru of America contract that Subaru of America appoint sub-distributors shows that such sub-distributors are intended beneficiaries. This is contrary to New York law. In Artwear, Inc. v. Hughes, 202 A.D.2d 76, 615 N.Y.S.2d 689 (1994), the contract between a licensor and licensee recited that the licensee had the right to engage sublicensees to manufacture and distribute licensed products and the licensor would have the right of approval of proposed products, not to be unreasonably withheld. Id. at 691. The licensor refused to approve any products. The sublicensee sued the licensor, claiming to be a third-party beneficiary. The court affirmed the dismissal of the claim, stating: "This Court and others have consistently held in instances where the contract in issue makes clear that a third party will be retained to assist in the performance by the promisee that such third parties are not intended beneficiaries of the main contract." Id. at 693. The court cited the analogous rule that a subcontractor on a construction project is not a third-party beneficiary to the contract between the owner and the general contractor. Id. at 694. Contract language referring to third parties as necessary to assist the parties in their performance does not therefore show an intent to render performance for the third party's benefit, as did the contract at issue in Levin v. Tiber Holding Co., 277 F.3d at 249. Thus, the fact that the Fuji-Subaru of America contract calls for Subaru to appoint sub-distributors does not, as a matter of law, make the sub-distributors intended beneficiaries.
 
 
 28
 Distributors cites Exercycle of Mich., Inc. v. Wayson, 341 F.2d 335 (7th Cir. 1965), but it is not analogous. There, a manufacturer had separate contracts with various distributors limiting each distributor's territory. The court held that the distributors were third-party beneficiaries of each other's contracts with the manufacturer because the point of the territorial restrictions in each contract was to benefit other distributors, not the manufacturer. Id. at 337. Here, Subaru of America had every reason to obtain the exclusive distribution right from Fuji for its own benefit, not just to protect the sub-distributors.
 
 
 29
 Subaru Distributors argues that the later Subaru of America-Subaru Distributors Distribution Agreement forms part of the "surrounding circumstances" of the Fuji-Subaru of America contract. In particular, Subaru Distributors points to the recital in that agreement that Subaru of America "is a party to an agreement with Fuji . . . under the terms of which [Subaru of America] is the sole distributor for the Subaru vehicles . . . in . . . the United States." The six-year gap between the execution of the 1969 Fuji-Subaru of America contract and the 1975 Subaru of America-Subaru Distributors Distribution Agreement makes it impossible to characterize the later agreement as part of the "surrounding circumstances" of the earlier one. Moreover, the reference to the Fuji-Subaru of America contract in the later agreement, to which Fuji was not a party, does nothing to establish that the earlier agreement was made for the benefit of Subaru Distributors.
 
 
 30
 Neither the Fuji-Subaru of America contract nor the Subaru of America-Subaru Distributors Distribution Agreement supports the inference that Subaru Distributors was an intended beneficiary of the Fuji-Subaru of America contract. The district court was correct in dismissing the third-party-beneficiary claim against Fuji.
 
 III.
 
 31
 Subaru Distributors argues that if we reverse the district court's dismissal of the contract claims, we should reinstate its claims against Fuji, GM, Saab and Saab Cars USA for tortious interference and conspiracy to commit tortious interference and its claim against Fuji to pierce the corporate veil. Because we have affirmed the district court's dismissal of the contract claims, there is no basis for reversing the dismissal of the other counts.
 
 
 32
 We affirm the district court's dismissal of the complaint.
 
 
 
 Notes:
 
 
 *
 The Honorable John R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 There is a very considerable question as to whether the Fuji-Subaru of America contract extended to autos and parts manufactured by Fuji and distributed under a different brand name than Subaru, but we need not reach that question
 
 
 [2]
 The Distribution Agreement states that it is governed by the law of Pennsylvania, the state where Subaru of America was incorporated at the time of the agreement. Subaru of America is now incorporated in New Jersey. Under New York choice of law principles, the connection with Pennsylvania may be too remote to warrant the application of Pennsylvania lawSee Cargill, Inc. v. Charles Kowsky Res. Inc., 949 F.2d 51, 55 (2d Cir.1991). The district court concluded that there was no important difference in the law of Pennsylvania, New York, and New Jersey regarding the issues in dispute between Subaru of America and Subaru Distributors, and the parties initially agreed with this approach, but Subaru Distributors contended at oral argument that New York law applies. We therefore will examine the Subaru Distributors-Subaru of America claim to determine whether it can survive under New York law.
 
 
 [3]
 Because we conclude that Subaru Distributors is not an intended third-party beneficiary of the Fuji-Subaru of America contract, we need not reach the question of whether the exclusive distribution right of that contract extends to products not distributed under the Subaru brand name
 
 
 [4]
 The district court noted some uncertainty about whether New York or Japanese law should govern the Fuji-Subaru of America contract. However, on appeal both Fuji and Subaru Distributors cite only New York law; we therefore assume that New York law applies