■ In the Matter of PART 60 PUT-BACK LITIGATION. FEDERAL HOUSING FINANCE AGENCY, Plaintiff, and DEUTSCHE BANK NATIONAL TRUST COMPANY, in its Capacity as Trustee for the MSAC 2007-NC1 TRUST, Appellant, v MORGAN STANLEY ABS CAPITAL I INC., Respondent. In the Matter of PART 60 PUT-BACK LITIGATION. FEDERAL HOUSING FINANCE AGENCY, Plaintiff, and DEUTSCHE BANK NATIONAL TRUST COMPANY, in its Capacity as Trustee for the MSAC 2007-NC3 TRUST, Appellant, v MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, as Successor-by-Merger to MORGAN STANLEY MORTGAGE CAPITAL INC., Respondent. [45 NYS3d 418]—

Orders, Supreme Court, New York County (Marcy S. Friedman, J.), entered April 20, 2016, which, insofar as appealed

from, granted defendant's motions to dismiss, unanimously affirmed, with costs.

The NC3 Trust

The tolling agreement between nonparty National Credit Union Administration (NCUA)—a certificate holder in the NC3 Trust—and various Morgan Stanley entities—the sponsor of the securitization—states, "the Potential Claims do not include causes of action and claims by any person or entity that is not a party to this tolling agreement as set forth in the first paragraph," i.e., any person or entity other than NCUA and Morgan Stanley. Hence, plaintiff is not an intended third-party beneficiary (*see e.g. Fort Lincoln Civic Assn., Inc. v Fort Lincoln New Town Corp.*, 944 A2d 1055, 1069 [DC 2008]). (The NCUA tolling agreement is governed by District of Columbia law.)

Plaintiff contends that we should infer that NCUA and Morgan Stanley intended to benefit plaintiff because it was the only one who could pursue a claim. That is incorrect. First, while certificate holders' rights to sue *"upon or under or with respect to" the Pooling and Servicing Agreement* (PSA) are *limited* (emphasis added), that is not the same as saying that only plaintiff (the trustee under the PSA) can pursue a claim. Second, the tolling agreement was not limited to claims under the PSA. To the extent NCUA had non-contract claims, they would not have been barred by the no-action clause in the PSA (*see Quadrant Structured Prods. Co., Ltd. v Vertin*, 23 NY3d 549, 552 [2014]). Third, as a matter of fact, NCUA brought its own lawsuit.

Because plaintiff cannot take advantage of the tolling agreement, its deadline to sue was May 31, 2013. On that date, Federal Housing Finance Agency (FHFA), as conservator for the Federal Home Loan Mortgage Corporation—an NC3 certificate holder—filed a summons with notice, purportedly on behalf of the trustee (i.e., plaintiff). On August 27, 2013, plaintiff first asked defendant to cure or repurchase defective loans. On November 6, 2013, plaintiff filed the complaint. Under similar circumstances, we have held that the trustee's claims are time-barred on standing grounds (*see U.S. Bank N.A. v DLJ Mtge. Capital, Inc.*, 141 AD3d 431, 432-433 [1st Dept 2016]; *Nomura Asset Acceptance Corp. Alternative Loan Trust v Nomura Credit & Capital, Inc.*, 139 AD3d 519, 520 [1st Dept 2016]; *ACE Sec. Corp. v DB Structured Prods., Inc.*, 112 AD3d 522 [1st Dept 2013], *affd* 25 NY3d 581 [2015]).

Citing *Campbell v Hudson & Manhattan R.R. Co.* (277 App Div 731 [1st Dept 1951], *affd* 302 NY 902 [1951]), plaintiff contends that the above cases and the no-action clause in the

PSA do not apply because FHFA commenced this action on behalf of the trustee. This argument is unavailing. *Campbell* said, *"If a trustee* under . . . an indenture *acts in bad faith, or,* abdicating its function . . . , *declines to act at all,* bondholders for themselves and others similarly situated may bring a derivative action in the right of the trustee . . . . *In that event* they are not subject to the limitations of" the no-action clause (277 App Div at 734-735 [emphasis added]; *see also Velez v Feinstein*, 87 AD2d 309, 314 [1st Dept 1982], *lv dismissed in part and denied in part* 57 NY2d 605 [1982]). FHFA did not allege that plaintiff (the trustee) had acted in bad faith or declined to act. In addition, FHFA failed to "set forth with particularity [its] efforts . . . to secure the initiation of the action by the trustee[ ], or the reasons for not making such effort" (*Velez*, 87 AD2d at 316 [internal quotation marks omitted]).

The NC1 Trust

The tolling agreement between various HSH entities (at least one of which was a certificateholder in the NC1 trust) and various Morgan Stanley entities did not clearly establish HSH's and Morgan Stanley's intent to confer an immediate benefit on plaintiff (*see e.g. State of Cal. Pub. Employees' Retirement Sys. v Shearman & Sterling*, 95 NY2d 427, 434-435 [2000]; *LaSalle Natl. Bank v Ernst & Young*, 285 AD2d 101, 108-109 [1st Dept 2001]). The word "representatives" simply will not bear the weight that plaintiff wants to put on it (*see generally Matter of Westmoreland Coal Co. v Entech, Inc.*, 100 NY2d 352, 358 [2003] ["The meaning of a writing may be distorted where undue force is given to single words or phrases" (internal quotation marks omitted)]).

Plaintiff's arguments that (1) it is an implied intended beneficiary of the HSH-Morgan Stanley agreement because it is the only one who can recover and (2) the no-action clause does not apply to a derivative action are unavailing for the same reasons set forth relative to "The NC3 Trust" (*supra*).

In light of the particular wording of the backstop obligation in this case, we find that plaintiff's demand on defendant was not a condition to defendant's performance; therefore, accrual of plaintiff's claim was not delayed (*see ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc.*, 25 NY3d 581, 597 [2015]; *Deutsche Bank Natl. Trust Co. v Flagstar Capital Mkts. Corp.*, 143 AD3d 15, 22 [1st Dept 2016]). Unlike the situation in *U.S. Bank,* it was not a condition precedent to enforcement of defendant's backstop obligation that the trustee first provide notice of the alleged breaches to

nonparty NC Capital Corporation and allow a cure period to expire (*cf. U.S. Bank N.A.*, 141 AD3d at 432). Concur—Acosta, J.P., Mazzarelli, Manzanet-Daniels, Webber and Gesmer, JJ.