RICK LOCKWOOD, on Behalf of Himself and All Other Persons Similarly Situated, Plaintiff-Appellant, v. STANDARD AND POOR'S CORPORATION, Defendant-Appellee.

First District (6th Division)   No. 1—95—3063

Opinion filed June 13, 1997.—Rehearing denied July 24, 1997.

Ann R. Rode and Marshall Patner, both of Chicago, for appellant.

Robert G. Krupka and Sandra A. Miller, both of Kirkland & Ellis, of Chicago, for appellee.

JUSTICE THEIS delivered the opinion of the court:

Plaintiff, Rick Lockwood (Lockwood), appeals from the order of the circuit court dismissing with prejudice his second-amended complaint. On behalf of himself and other similarly situated options investors, Lockwood sued defendant, Standard & Poor's Corporation (Standard & Poor's), for breach of contract and negligent misrepresentation. Lockwood alleged that he and other options investors suffered lost profits on certain options contracts because Standard & Poor's failed to correct a closing stock index value. The trial court granted Standard & Poor's section 2—615 motion to dismiss. 735 ILCS 5/2—615 (West 1992). On appeal, Lockwood contends the trial court erred in granting dismissal. Specifically, Lockwood argues that his second-amended complaint states a cause of action: (1) for breach of contract because options investors are third-party beneficiaries of the license agreement between Standard & Poor's and the Chicago Board Options Exchange; and (2) for negligent misrepresentation due to Standard & Poor's failure to correct the erroneous closing index value. For the following reasons, we affirm.

■ Dismissal of a cause of action pursuant to section 2—615 is ap-

propriate only when it clearly appears that no set of facts could ever be proved under the pleadings that would entitle the plaintiff to recover. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115, 660 N.E.2d 863, 867 (1995). Whether a complaint states a valid cause of action is a question of law, and our review of a dismissal pursuant to a section 2—615 motion is *de novo. Majumdar v. Lurie*, 274 Ill. App. 3d 267, 268, 653 N.E.2d 915, 917 (1995). In reviewing whether Lockwood states a cause of action upon which relief can be granted, we must accept and consider as true all well-pleaded facts in the second-amended complaint. *Majumdar*, 274 Ill. App. 3d at 268, 653 N.E.2d at 917.

Standard & Poor's compiles and publishes two composite stock indexes, the "S&P 100" and the "S&P 500" (collectively the S&P indexes). The S&P indexes are weighted indexes of common stocks primarily listed for trading on the New York Stock Exchange (NYSE). Standard & Poor's licenses its S&P indexes to the Chicago Board Options Exchange (CBOE) to allow the trading of securities options contracts (S&P index options) based on the S&P indexes (the license agreement). According to the rules promulgated by the CBOE regulating the trading of index options, Standard & Poor's is designated the "reporting authority" and, thus, "the official source for calculating and disseminating the current value" of the S&P 100 and S&P 500 indexes. As stated by the reporting authority, the closing index value "shall be the last index value reported on a business day."

S&P index options are settled by the Options Clearing Corporation (OCC). The exercise settlement values for S&P index options are the closing index values for the S&P 100 and S&P 500 stock market indexes as reported by Standard & Poor's to OCC following the close of trading on the day of exercise. S&P index options expire at 11:59 p.m. eastern time on the Saturday immediately following the third Friday of the expiration month. All times specified in Lockwood's complaint are to eastern standard time.

In his complaint, Lockwood alleges that at approximately 4:12 p.m. on Friday, December 15, 1989, the last trading day prior to expiration of the December 1989 S&P index options contracts, the NYSE erroneously reported a closing price for Ford Motor Company common stock. Ford Motor Company was one of the composite stocks in both the S&P 100 and S&P 500. At approximately 4:13 p.m., Standard & Poor's calculated and disseminated closing index values for the S&P 100 and S&P 500 stock market indexes based on the erroneous price for Ford stock. The NYSE reported a corrected closing price for Ford Motor at approximately 4:18 p.m. Standard & Poor's corrected the values of the S&P 100 and S&P 500 stock market indexes the following Monday, December 18, 1989.

In the meantime, however, OCC automatically settled all expiring S&P index options according to the expiration date of Saturday, December 16, 1989. OCC used the uncorrected closing index values to settle all expiring S&P index options. Due to the error, Lockwood alleges that the S&P 100 index was overstated by 0.15 and he lost $105. Lockwood claims investors in S&P 500 index options suffered similar losses. Lockwood states that, according to OCC rules, an option settlement is irrevocable once completed.

Lockwood thus filed a class action on behalf of "all holders of long put options and all sellers of short call options on the S&P 100 or S&P 500 *** which were settled based on the closing index values for December 15, 1989 as reported by Standard & Poor's." Count I of the second-amended complaint claimed that the options holders could recover in contract as third-party beneficiaries of the license agreement between Standard & Poor's and the CBOE. Counts II and III alleged that, by failing to correct the S&P closing index values until the following Monday, Standard & Poor's negligently misrepresented the value of the S&P indexes, which caused 92,000 index options to settle erroneously and thereby caused Lockwood and others to lose money on their index options.

Standard & Poor's reasserted the section 2—615 motion to dismiss it had earlier filed regarding Lockwood's amended complaint. 735 ILCS 5/2—615 (West 1992). The trial court granted Standard & Poor's section 2—615 motion to dismiss on all counts. In reviewing the motion, the trial court acknowledged that the second-amended complaint was at issue but discussed the five counts of the amended complaint. To the extent that the second-amended complaint merely restyled the counts alleged in the amended complaint, the trial court considered and dismissed all relevant counts of the second-amended complaint.

On appeal, Lockwood argues that the trial court improperly granted Standard & Poor's section 2—615 motion to dismiss. First, Lockwood contends that he and other similarly situated options holders were third-party beneficiaries, via their "agent" OCC, of the license agreement between Standard & Poor's and the CBOE. Accordingly, Lockwood alleges that, under the license agreement, Standard & Poor's has a warranty to correct promptly and may not disclaim liability for consequential damages. Alternatively, under tort theory, Lockwood argues that Standard & Poor's is liable for either negligent or fraudulent misrepresentation and, thus, any contractual disclaimers are nullified. Even taking all facts as alleged by Lockwood as true, we agree with the trial court that Lockwood's second-amended complaint does not state a cause of action for breach

of contract, negligent misrepresentation, or fraudulent misrepresentation.

■ Lockwood's first allegation is that options investors, via their settlement agent the OCC, are third-party beneficiaries of the license agreement between Standard & Poor's and the CBOE because the license agreement makes OCC "a special recipient" of prompt notice of daily "closing index values." While Illinois law governs this suit generally, the parties acknowledge that interpretation of the license agreement is governed by the law of New York. Relying on the Restatement (Second) of Contracts, the New York Court of Appeals has explained that an intended third-party beneficiary may enforce a contract if he is the only party who can recover if the promisor breaches the contract or if the contract language indicates an intention to permit enforcement by the third party. *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45, 485 N.E.2d 208, 212, 495 N.Y.S.2d 1, 5 (1985).

Here, nothing in the express language of the license agreement indicates an intention to create a third-party beneficiary. Indeed, paragraph 15(a) explains that the "Agreement is solely and exclusively between the parties as presently constituted and shall not be assigned or transferred." Paragraph 15(b) provides that the "Agreement constitutes the entire agreement of the parties hereto with respect to its subject matter and may be amended or modified only by a writing signed by duly authorized officers of both parties. *** There are no oral or written collateral representations, agreements, or understandings except as provided herein." These exclusivity and integration clauses do not evidence an intent to confer a third-party benefit. Because the license agreement intends to be wholly integrated, we do not look to extrinsic evidence of Lockwood's status. *Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.*, 399 F.2d 289, 293 (2d Cir. 1968).

Moreover, mere mention in the license agreement of the OCC as a "special recipient of closing index values" does not vault Lockwood into third-party beneficiary status. Even assuming that OCC acts as a settlement agent for options investors, retention of a third party to assist in the performance by the promisee does not mean that such third parties are intended beneficiaries of the main contract. *Artwear, Inc. v. Hughes*, 202 A.D.2d 76, 83, 615 N.Y.S.2d 689, 692 (1994).

■ Lockwood's claim that he is the only party who can recover if the promisor breaches the agreement is likewise erroneous. Standard & Poor's and the CBOE are the only contracting parties and the CBOE can easily enforce its rights under the license agreement. In addition, paragraph 12(d) of the agreement precludes recovery of

consequential damages, including lost profits, arising out of the license agreement. Thus, the express terms of the agreement indicate that the type of recovery Lockwood seeks was specifically excluded under the license agreement.

In sum, Lockwood is not an intended third-party beneficiary of the license agreement. By its express language, the license agreement intends to confine the agreement to Standard & Poor's and the CBOE. Lockwood and the other options investors clearly were not intended beneficiaries via their "agent" the OCC. We agree with the trial court that Lockwood does not have standing to sue for a breach of the terms of the license agreement.

Regardless, even if Lockwood were an intended third-party beneficiary to the agreement, his rights would be derivative and "subject to the same defenses as are available to the contracting party." *Artwear*, 202 A.D.2d at 82, 615 N.Y.S.2d at 693. Thus, while the license agreement does contain a warranty by Standard & Poor's to correct promptly errors brought to its attention, the agreement also expressly disclaims any guarantee of "the accuracy and/or the completeness of any of the S&P Indexes or any data included therein." And again, the license agreement precludes recovery of consequential damages, including lost profits. Even if Lockwood did have standing, by its very terms, the license agreement would preclude Lockwood's recovery for lost profits.

■ Count II of the second-amended complaint alleges negligent misrepresentation. To state a valid claim for negligent misrepresentation, a plaintiff must plead and prove: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the false statement; (3) intention to induce the other party to act; (4) reliance by the other party on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty owed by the defendant to the plaintiff to communicate accurate information. *Board of Education v. A,C&S, Inc.*, 131 Ill. 2d 428, 452, 546 N.E.2d 580, 591 (1989). We find that Lockwood has not alleged facts sufficient to establish the first element, namely, that Standard & Poor's made a false statement of material fact.

■ Both parties agree that the closing index value first reported by Standard & Poor's at 4:13 p.m. on Friday, December 15, 1989, contained an erroneous closing price for Ford Motor Company common stock. Lockwood does not claim that the reporting of this value at 4:13 p.m. by Standard & Poor's was tortious. Rather, Lockwood urges that Standard & Poor's should not have continued to disseminate the uncorrected settlement values after the NYSE sent a correction message at 4:18 p.m. Lockwood argues that, taken as true for

purposes of a section 2—615 motion, these facts state a claim for negligent misrepresentation.

We do not subscribe to Lockwood's theory that the closing index values became false statements after 4:18 p.m. when Standard & Poor's allegedly learned of the correction but failed to incorporate it into the index value until the following Monday. The CBOE rules indicate that Standard & Poor's is the reporting authority for the S&P indexes and that the closing index value is "the last index value reported on a business day." According to the CBOE rules, the CBOE options market closes daily at 3:15 p.m. central standard time (*i.e.*, 4:15 p.m. eastern standard time). The closing index values initially disseminated at 4:13 p.m. were the last index values reported on Friday, December 15, 1989. By definition, the last index value reported by Standard & Poor's was the final closing index value. The exercise settlement values were the closing index values as reported by Standard & Poor's to OCC. Thus, we find that the facts as asserted in Lockwood's second-amended complaint do not allege an actionable misrepresentation.

We are mindful of this court's opinion in *Rosenstein v. Standard & Poor's Corp.*, 264 Ill. App. 3d 818, 636 N.E.2d 665 (1993). While the same events of December 1989 were pleaded in the *Rosenstein* complaint, the pleadings in the instant case contain new facts and theories of recovery. Most significantly, Lockwood has attached to his complaint the license agreement between Standard & Poor's and the CBOE and the entire chapter of the CBOE rules concerning index options. Based on the record before us, these documents were not attached to the *Rosenstein* complaint. Examining the Lockwood complaint in the context of these additional documents, we reach a result different than *Rosenstein*. The CBOE rules plainly establish Standard & Poor's as the final and definitive authority on current and closing index values for the S&P indexes. Accordingly, we need not address the duty issue discussed in *Rosenstein* because we find that Lockwood has not and cannot allege, based on these facts, a tortious misrepresentation by Standard & Poor's.

■ Lockwood's third and final count also fails to state a cause of action. Count III, which, like count II, is entitled negligent misrepresentation, attempts to allege fraudulent misrepresentation merely by incorporating the allegation that Standard and Poor's acted "willfully or recklessly and with gross negligence" to the allegations contained in count II. Because the complaint fails to allege a negligent misrepresentation by Standard & Poor's, the trial court did not err in dismissing this count as well.

Accordingly, the trial court did not err in granting Standard &

Poor's section 2—615 motion to dismiss. Lockwood does not have standing to sue Standard & Poor's for a breach of the license agreement. Similarly, Lockwood has not pleaded facts sufficient to establish a negligent misrepresentation by Standard & Poor's of the closing S&P index values for December 15, 1989. And finally, Lockwood did not allege the elements of a claim for fraudulent misrepresentation.

Affirmed.

CAHILL and O'BRIEN, JJ., concur.