OPINION OF THE COURT
Kenneth R. Fisher, J.
Defendants, Henry Isaacs Home Remodeling and Repair and Henry Isaacs, individually and as president of Henry Isaacs Home Remodeling and Repair, move pursuant to CPLR 3212 for an order dismissing plaintiffs’ complaint by reason of lack of privity of contract and lack of evidence of fraud or misrepresentations pursuant to CPLR 3016 (b). Plaintiffs, Emmelyn Logan-Baldwin and LeRoy A. Baldwin, cross-move for: (1) renewal and/or reargument of the January 26, 2007 decision and order dismissing the fraud, fraudulent inducement to contract and contract claims against all defendants, including defendant Noto, based upon DDJ Mgt., LLC v Rhone Group L.L.C. (15 NY3d 147 [2010]), the sworn deposition testimony, and relevant documents; (2) conforming the pleadings to the proof; (3) summary judgment as to liability of all defendants (except the Brewster defendants); (4) a date for plaintiffs’ proof of damages, including the defaulting defendants (Brewster defendants) or, in the alternative, a day certain for a jury trial on the remaining issues of liability and damages; and (5) an award of fees and costs to plaintiffs and an adverse inference against defendants on the trial of any remaining issues because of defendants’ “spoliation of evidence” relevant and material to plaintiffs’ claims.
This action relates to renovations sought by plaintiffs for their historic home located at 19 Arnold Park, Rochester, New *176 York. Plaintiffs allege claims sounding in breach of contract and fraud in connection with contracts entered into and representations allegedly made to replace and restore the roofs on the home and garage, paint both structures and the yard fences, gate, and performs other tasks. (Complaint If 11.) Plaintiffs allege that the work was to be performed taking into account the historic design and construction of the house. (Id.)
The first cause of action for breach of contract alleges that, prior to October 2000, L.S.M. General Contractors (LSM) and Noto represented that they had the “special skills and experiences” needed to complete the renovations required by plaintiffs and that they would engage similarly qualified subcontractors to assist in performing the renovations, as needed. (Id. 111112-13.) Plaintiffs hired LSM and Noto, and on October 16, 2000, plaintiffs and LSM and/or Noto entered into a contract for the performance of certain renovations in exchange for payment by plaintiffs. (Id. 1Í 14.) Plaintiffs allege that a condition of the contract was to engage similarly qualified subcontractors due to the historic nature of the property. (Id. II15.) Plaintiffs allege that LSM, Noto, and/or their subcontractors breached the contract by failing and neglecting to perform as required. (Id. 1116.) Plaintiffs allege various damages caused by the alleged breach. (Id. 1117.) As a result, plaintiffs contend that they have acted as general contractors on the renovation since March of 2001 and have arranged for corrective actions, as well as monitoring the completion of the work. (Id. U 17a.) Plaintiffs allege damages in the amount of approximately $250,000. (Id. If 18.)
The second cause of action alleges fraudulent representations, alleging that to induce plaintiffs to execute the contract, LSM and Noto represented repeatedly that they and their subcontractors had the knowledge and qualifications to repair and restore the historic home. (Id. 1120.) In actuality, however, it is alleged that none of defendants had the requisite skills. (Id. 11 21.) Plaintiffs allege that they did not know the truth and were induced by defendants’ representations. (Id. 1123.)
The third cause of action also alleges fraudulent representations, contending that LSM and/or Noto repeatedly represented that neither they, nor their subcontractors, found problems with the Yankee gutters and/or decorative supporting trim on the house. (Id. 1126.) However, it is alleged that the subcontractors hired did not strip the old roofing or gutter covering materials to make any determination about the Yankee gutters and supports. (Id. 11 27.) Plaintiffs allege that the representations *177 were made to induce them to believe that the required work was completed, and that they believed the representations made to them. (Id. 1Í1Í 28-29.)
The fourth through seventh causes of action also allege fraud on the part of LSM and/or Noto. In the fourth cause of action, plaintiffs allege that LSM and Noto misrepresented whether the roofs’ base structures had been examined. (Id. 1111 32-33.) In the fifth cause of action, plaintiffs allege LSM and Noto misrepresented whether ice and water shields and felt paper were installed per the contract. (Id. 1ÍH 38-39.) The sixth cause of action alleges that LSM and Noto represented that all damage caused by leaks would be repaired, and that they failed to secure the roofs fully to insure that no leaks occurred. (Id. 1Í1Í 44-45.) Finally, the seventh cause of action alleges that the defendants in March 2001 represented that the roofs/gutters were inspected and deemed to be repaired in 90% to 95% “good workmanlike manner.” (Id. 1i 50.) Plaintiffs allege in this cause of action that all defendants knew or should have known that the representations were not true, but the representations were made for the purpose of deceiving plaintiffs and inducing them to believe the contract was being performed fully. (Id. 1i1f 51-52.)
Though inartfully drawn, plaintiffs’ complaint makes allegations against the Isaacs defendants and LSM in all of the causes of action.
Breach of Contract
The Isaacs defendants seek dismissal, alleging that there is a lack of privity and that plaintiffs were not third-party beneficiaries.
As a preliminary matter, plaintiffs emphasize that the Isaacs defendants did not plead lack of privity in their answer. CPLR 3018 (b) states: “Affirmative defenses. A party shall plead all matters which if not pleaded would be likely to take the adverse party by surprise or would raise issues of fact not appearing on the face of a prior pleading . . . .” Capacity and standing, terms used by plaintiffs herein, are not “interchangeable.” (See Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 154 [1994].) “ ‘Standing’ is an element of the larger question of ‘justiciability.’ ” (Id., quoting Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991].) “[T]he standing analysis is, at its foundation, aimed at advancing the judiciary’s self-imposed policy of restraint, which precludes the issuance of advisory opinions.” (Id. at 155.)
“ ‘Capacity,’ in contrast, concerns a litigant’s power to appear and bring its grievance before the court.” (Id.) “The concept of *178 a lack of capacity, which has also occasionally been intermingled with the analytically distinct concept of a failure to state a cause of action, does not admit of precise or comprehensive definition.” (Id.) “Capacity, or the lack thereof, sometimes depends purely upon a litigant’s status. A natural person’s status as an infant, an adjudicated incompetent or, formerly, a felony prisoner, for example, could disqualify that individual from seeking relief in court.” (Id.)
Plaintiffs urge the court to equate privity with capacity or standing and determine that this defense has been waived because it was not timely raised as required by CPLR 3211 (e). However, privity, as alleged by the Isaacs defendants, relates to an essential element of a breach of contract claim. (See Seaver v Ransom, 224 NY 233, 237 [1918]; Leonard v Gateway II, LLC, 68 AD3d 408 [1st Dept 2009]; CDJ Bldrs. Corp. v Hudson Group Constr. Corp., 67 AD3d 720 [2d Dept 2009].) Privity is not a defense specifically enumerated under CPLR 3211 (e) as subject to waiver if not timely pleaded.
As such, the Isaacs defendants’ motion to amend to add a defense of lack of privity is granted. CPLR 3025 (b) states:
“A party may amend his pleading, or supplement it by setting forth additional or subsequent transactions or occurrences, at any time by leave of court or by stipulation of all parties. Leave shall be freely given upon such terms as may be just including the granting of costs and continuances.”
Leave to amend should consequently be granted absent “surprise or prejudice.” (Comsewogue Union Free School Dist. v Allied-Trent Roofing Sys., Inc., 15 AD3d 523, 524 [2d Dept 2005].)
Siegel has noted: *179 The decision whether to grant such a motion lies in the court’s discretion. (See C-Kitchens Assoc., Inc. v Travelers Ins. Cos. [Travelers Ins. Co.], 15 AD3d 905 [4th Dept 2005], citing Edenwald Contr. Co. v City of New York, 60 NY2d 957, 959 [1983].) A proposed amendment may be denied where it is apparent that the proposed amendment patently lacks merit. (See Water Club Homeowner’s Assn., Inc. v Town Bd. of Town of Hempstead, 16 AD3d 678 [2d Dept 2005]; McFarland v Michel, 2 AD3d 1297, 1300 [4th Dept 2003].) “[A] court will not ordinarily consider the merits of the proposed new matter unless it is so obviously lacking in merit as to have no chance of success whatever . . . .” (Siegel, NY Prac § 237 [4th ed].)
*178 “Almost everything parties seek to add to their pleadings is designed to prejudice the other side. That’s what litigation is all about. So, the showing of prejudice that will defeat the amendment must be traced right back to the omission from the original pleading of whatever it is that the amended pleading wants to add — some special right lost in the interim, some change of position or some significant trouble or expense that could have been avoided had the original pleading contained what the amended one now wants to add.” (David D. Siegel, NY Prac § 237 [4th ed].)
*179 Here, as discussed supra, the proposed amendment to add the defense of lack of privity is not patently lacking in merit. Moreover, it can come as no surprise to plaintiffs that they did not directly contract with the Isaacs defendants. The motion to amend to add the defense of privity is granted.
The evidence before the court establishes a lack of privity between plaintiffs and the Isaacs defendants. The October 16, 2000 contract on its face is made between plaintiffs and LSM. (See Isaacs defendants’ papers, exhibit E.) There was never a written contract between plaintiffs and the Isaacs defendants. There is no evidence that any Isaacs defendant gave plaintiffs a written warranty or contract. (See affirmation of R. Shaddock, dated Sept. 28, 2010, H1i 7, 8.) Nor is there any evidence of an oral contract between them. Privity is essential to a contract claim. (See Leonard v Gateway II, LLC, 68 AD3d 408 [1st Dept 2009]; CDJ Bldrs. Corp. v Hudson Group Constr. Corp., 67 AD3d 720 [2d Dept 2009].)
Plaintiffs argue that they are third-party beneficiaries.
“Parties asserting third-party beneficiary rights under a contract must establish ‘(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost.’ ” (Mendel v Henry Phipps Plaza W., Inc., 6 NY3d 783, 786 [2006], quoting Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 336 [1983].)
“It is the generally accepted rule that the intent to confer a direct benefit on a third party must clearly appear in order to enable such a party, not named in the contract, to recover there *180 under.” (Snyder Plumbing & Heating Corp. v Purcell, 9 AD2d 505, 508 [1st Dept 1960].) There must be a “clear intention to confer the benefit of the promised performance.” (PT. Bank Mizuho Indonesia v PT. Indah Kiat Pulp & Paper Corp., 25 AD3d 470, 471 [1st Dept 2006].) “Absent such intent, the third party is merely an incidental beneficiary with no right to enforce the contract.” (Strauss v Belle Realty Co., 98 AD2d 424, 426 [2d Dept 1983]; see also Beveridge v New York El. R.R. Co., 112 NY 1, 26 [1889].)
The general rule is “that the owner has no right against the subcontractor, in the absence of clear words to the contrary.” (4 Corbin on Contracts § 779D, at 47 [1951].) “The owner is neither a creditor beneficiary nor donee beneficiary [i.e., is not an intended beneficiary in modern parlance]; the benefit that he receives from performance [of the subcontract] must be regarded as merely incidental.” (Id.; see e.g. Outlaw v Airtech A.C. & Heating, Inc., 412 F3d 156, 164 [DC Cir 2005, Roberts, J.] [“traditional contract law rule that, absent any indication to the contrary in an agreement, property owners are not intended or third-party beneficiaries of contracts between contractors and subcontractors”]; Pierce Assoc., Inc. v Nemours Found., 865 F2d 530, 535-539 [3d Cir 1988] [same]; International Fid. Ins. Co. v Gaco W., 229 AD2d 471, 474 [2d Dept 1996].) The New York Court of Appeals has adhered to this rule in the reverse situation of a subcontractor’s suit against the owner seeking enforcement of owner’s obligation to pay the general contractor. (Port Chester Elec. Constr. Corp. v Atlas, 40 NY2d 652, 656 [1976], citing 4 Corbin, Contracts § 779D; see also Artwear, Inc. v Hughes, 202 AD2d 76, 84 [1st Dept 1994] [“it is well settled that the subcontractor or supplier of a general contractor on a construction project is not invested with third-party beneficiary status”]; Schuler-Haas Elec. Corp. v Wager Constr. Corp., 57 AD2d 707 [4th Dept 1977].) The Court of Appeals also relied on, as it so very often does in contract cases, the Restatement (Second) of Contracts for this conclusion. The American Law Institute treats both situations interchangeably (Restatement [Second] of Contracts § 302, Comment e, Illustration 19 [“A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B’s promise, and B is an incidental beneficiary of C’s promise to pay A for the building”]). There is no reason to believe, especially in view of the Court’s citation of the Restatement in Port Chester (40 NY2d at 656), that the Court of Appeals would not treat both situations similarly, on *181 the theory that “the . . . services performed by the subcontractor . . . are for the benefit of the general contractor who is responsible for the completion of the improvement, not for the benefit of the owner.” (Schuler-Haas Elec., 57 AD2d at 708; see also 4 Corbin, Contracts § 779D; 9-45 Corbin on Contracts § 45.3 [rev ed].)
The Appellate Divisions, however, have not uniformly applied the foregoing rule. Gaco W. adheres to the rule quoted above that an owner has no right of recovery against a subcontractor in the absence of contractual language to the contrary. (229 AD2d at 474 [where no express provision of the contract provided one way or the other on the third-party beneficiary issue (see record on appeal)].) That is our case here.
Other cases, however, appear to take the position that a question of fact is presented on the owner’s third-party beneficiary status when the subcontract is silent, on the theory that “[a] subcontractor can insist upon a contractual clause negating enforcement of the contract by a third party.” (Facilities Dev. Corp. v Miletta, 180 AD2d 97, 101 [3d Dept 1992] [holding that, in the absence of such a clause, the subcontractor is not entitled to summary judgment]; see also City of New York [Dept. of Parks & Recreation-Wollman Rink Restoration] v Kalisch-Jarcho, Inc., 161 AD2d 252, 253 [1st Dept 1990] [“a subcontractor is free to insist upon a contractual clause expressly negating enforcement of the contract by third parties”].) These cases turn the applicable common-law rule on its head, by presuming an intention to benefit the owner in the absence of clear language to the contrary, when the actual common-law rule described in the Restatement, and in Corbin’s treatise quoted above, and given effect by the Court of Appeals in Port Chester, would presume a lack of such intent if the contract has no express provision on the issue, at least when no other admissible extrinsic evidence suggests otherwise. The latter approach accords with Fourth Ocean Putnam Corp. v Interstate Wrecking Co. (66 NY2d 38, 43-45 [1985]), in which summary judgment was granted against a third-party beneficiary claim in the absence of contractual language clearly pointing one way or another. {Id. at 45 [contrasting cases “upholding the third party’s right to enforce the contract (when) the language of the contract . . . clearly evidences an intent to permit enforcement by the third party . . . even though there was no duty of the promisee to the third party” (emphasis supplied)]; see *182 also id. [that plaintiff “might ultimately benefit” does not alone create an issue of fact whether the parties actually intended plaintiff to benefit].)* Cases, in addition to those referred to above, following this formulation are: Board of Mgrs. of Riverview at Coll. Point Condominium III v Schorr Bros. Dev. Corp. (182 AD2d 664 [2d Dept 1992]) and, especially, Amin Realty v K & R Constr. Corp. (306 AD2d 230 [2d Dept 2003]).
The only Fourth Department case the court has found touching the issue of subcontractor liability to the owner is Ralston Purina Co. v McKee & Co. (158 AD2d 969 [4th Dept 1990]). In that case, the “subcontract contained an express agreement by [the subcontractor] to be bound by the terms and conditions of [the general contractor]’s contract with plaintiff [owner]” (id. at 970). The court held that “[p]laintiff, therefore, was entitled to sue as a third-party beneficiary” (id. [emphasis supplied].) Thus, the rule applied was as stated here; otherwise there would have been no need to refer to the express terms of the contracts in question to glean third-party beneficiary status. (See also Baskewicz v Rochester Gas & Elec. Corp., 217 AD2d 922, 922 [4th Dept 1995], citing Ralston Purina Co. v McKee & Co., 158 AD2d 969, 970 [1990] [“the contract between Fast Trak and Solar Wind did not expressly state that they intended their contract to benefit RG&E”].) Given these Fourth Department cases, and that the Court of Appeals has not directly addressed the issue, but has decided in the converse situation against third-party beneficiary status, citing 4 Corbin, Contracts § 779D and Restatement (Second) of Contracts § 302, Comment e, Illustration 19, which treat both situations interchangeably, it is not open to this court to announce a differing rule. Accordingly, the motion for summary judgment dismissing the complaint *183 against Henry Isaacs Home Remodeling and Repair and Henry Isaacs, individually, insofar as it is based on contract principles, is granted.
[Portions of opinion omitted for purposes of publication.]

 The portion of the Fourth Ocean Putnam opinion referred to in the parenthetical reference above was apparently ignored in City of New York (Dept. of Parks & Recreation-Wollman Rink Restoration) v Kalisch-Jarcho, Inc. (161 AD2d 252 [1990]). In that case, the owner sought third-party beneficiary status in a subcontract, and the court granted it with the observation that it is “almost inconceivable” that the subcontractor “would not contemplate that the performance of their contractual obligations would ultimately benefit the owner.” (Id. at 253, quoting Key Intl. Mfg. v Morse/Diesel, Inc., 142 AD2d 448, 455 [2d Dept 1988].) The Key Inti. Mfg. case, from which that concept was taken, however, involved prime architectural and engineering contracts, not a subcontract. But it is not authority for plaintiffs’ cause of action against the subcontractor, Kalisch-Jarcho notwithstanding. I think the passage in 22 NY Jur 2d Contracts § 315 to the contrary is in error, as is Kalisch-Jarcho.