Harelick v Lora (2025 NY Slip Op 50036(U))

[*1]

Harelick v Lora

2025 NY Slip Op 50036(U)

Decided on January 10, 2025

Supreme Court, Bronx County

Howard-Algarin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 10, 2025
Supreme Court, Bronx County

Michael Harelick, Plaintiff,

against
Jose F. De La Cruz Lora, CITY OF NEW YORK DEPARTMENT OF DESIGN AND CONSTRUCTION, DEBOE CONSTRUCTION CORP., JOHN DOE COMPANY 1, JOHN DOE COMPANY 2, JOHN DOE COMPANY 3, AND HELLMAN ELECTRIC COMPANY, Defendants.

Index No. 31433/2017E

Counsel For Plaintiff Michael Harelick: Gurfein Douglas LLP
Counsel For Defendant Jose F. De La Cruz Lora: Cheven, Keely & Hatzis
Counsel For Defendant City of New York: Ahmuty Demers & Mcmanus
Counsel For Defendant Department of Design and Construction of The City of New York: Ahmuty Demers & Mcmanus
Counsel For Defendant Deboe Construction Corp.: Ahmuty Demers & Mcmanus
Counsel For Defendant Hellman Electric Corp.: Ahmuty Demers & Mcmanus

John A. Howard-Algarin, J.

The following papers were read on these motions (Seq # 1) for summary judgment submitted on April 8, 2024.
Notice of Motion — Affirmation and Exhibits Annexed NYSCEF Doc. # 70 — 95
Affirmation in Opposition and Exhibits Annexed NYSCEF Doc. # 98 — 103
Affirmation in Reply NYSCEF Doc. # 106
Upon the foregoing papers, the defendants, City of New York Department of Design and Construction ("the City"), Deboe Construction Corp. ("Deboe") and Hellman Electric Company ("Hellman") (collectively, "Defendants"), move for an Order, pursuant to CPLR § 3212, granting summary judgment and the dismissal of plaintiff, Michael Harelick's ("Plaintiff"), Complaint on the grounds that 1) the City was not provided prior written notice of the alleged condition at issue, and 2) the temporary pedestrian sign was not a proximate cause of plaintiff's accident. Plaintiff opposes the motion which is granted in its entirety.
This personal injury action arises out of a motor vehicle accident that occurred on October 7, 2016, at the intersection of Grand Concourse and East 167th Street in Bronx County. At the time of the accident, plaintiff, a pedestrian, was attempting to cross East 167th Street [*2]walking from its northeastern to its southeastern corner when he was struck by a vehicle owned and operated by co-defendant, Jose F. De La Cruz Lora ("Lora"). Plaintiff filed the instant complaint against the moving defendants, along with Lora, alleging that they were negligent in their design and construction of the temporary pedestrian crossing signal at the intersection, which negligence served as a proximate cause of plaintiff's injuries.
In support of their motion, defendants submit, inter alia, plaintiff's transcribed deposition testimony, the sdeposition transcripts of New York City employee, Fares Abdulrazzak, Deboe employee, Mais Al-Mirshid, and Hellman employee, Sean Goderdhan, the affirmed expert report of Michael C. Simon, P.E., and photos of the accident site dated in July and November 2016. 
Plaintiff's Testimony.
Plaintiff testified that prior to the accident, he attempted to cross East 167th Street on the left side of the Grand Concourse by first looking "both ways" and then proceeding across in a southbound direction. He testified that he looked for and did not see a pedestrian traffic signal in the southbound direction of the Grand Concourse at East 167th Street where he was walking. Plaintiff claimed to have determined it was safe for him to cross because he did not hear or see any traffic nearby. He testified that there were no other pedestrians walking with him as he began crossing claiming that any other pedestrians were "further back." Finally, plaintiff testified that the photos of the accident scene presented to him at the deposition, marked as Defendant's exhibits B, C and D, did not depict the area as it appeared to him on the date of the accident because he did not recall seeing a pedestrian traffic signal in the construction site that was then and there present. 
The Temporary Pedestrian Sign Installation.
The photos of the accident site proffered by defendants were captured by Google Earth images in July and November 2016, and depict a pedestrian traffic signal on the southeast corner of the Grand Concourse at its intersection with East 167th Street which appears to be mounted on a large concrete base. The accuracy of the contents of those photos was attested to in the affidavit of Carlos Casal ("Casal"), Hellman's Executive Vice President on the date of incident.[FN1]
Casal attests that Hellman installed the temporary pedestrian traffic signal in conjunction with a subcontract it had with Deboe as part of reconstruction work being performed at the intersection of East 167th Street and the Grand Concourse. According to Casal, the temporary electrical installation at that intersection was part of a larger Grand Concourse Reconstruction Project with, and inspected by, the City of the New York. Significantly, Casal attests that Hellman received no statements relating to any malfunction or violation of NYC DOT standards related to the temporary pedestrian signal at issue.
Defendants' Expert and Engineer and the City's Chief Engineer in Charge. 
In his certified report in support of the motion, expert licensed professional engineer and [*3]New York State Department of Transportation ("NYSDOT") certified bridge inspector, Micheal C. Simon ("Mr. Simon"), opines that the temporary pedestrian signal was constructed within applicable design standards, referencing two New York City Department of Transportation ("NYCDOT") "standard sheets," which outline the standard design for pedestrian signal installations. Mr. Simon states that although New York City has adopted the federal standard Manual on Uniform Traffic Control Devices ("MUTCD"), the MUTCD does not outline standards for temporary pedestrian signals. Thus, his analysis is based on NYCDOT standards.
Mr. Simon states the MUTCD standards allow for pedestrian signals as high as 13 feet above grade, neglecting to cite to a specific section of the MUTCD for this proposition. Alternatively, Mr. Simon states the NYCDOT standards shown through the referenced NYCDOT standard sheets range from 8 to 11 feet above grade. He adds that the temporary pedestrian signal at issue measures 10 feet 6 inches above grade, basing his estimate on his review of the google earth images attached to his report, and the NYCDOT standard sheets material. Mr. Simon opines that based upon plaintiff's testimony that he is 5 feet 7 inches, his field of vision at the time of the accident would include objects within an 18-foot vertical range, thus making the signal here visible to plaintiff at the time of the accident.
In addition to the deposition testimony of Fares Abdulrazzak, ("Mr. Abdulrazzak"), the Engineer in Charge of overseeing the Grand Concourse Reconstruction project for the New York City Department of Design and Construction, which included the construction taking place at the accident site, defendants also submit Mr. Abdulrazzak's affidavit in which he reiterates that there are no standard height specifications for temporary pedestrian traffic signals, "as the height depends on what pole a given contractor determines to utilize in installing the temporary pedestrian signal." 
Plaintiff's Opposition.
Plaintiff opposes submitting, inter alia, the affirmed expert report of licensed professional engineer, Steven Schneider, P.E. ("Schneider"), the NYCDOT standard sheet for traffic signals, and the MUTCD introduction page 1, section 6B, and section 4E.05.
Mr. Schneider's report is based on a visit he made to the accident site on November 11, 2016, shortly after the underlying incident. Significantly, Mr. Schneider asserts both that New York State and New York City have adopted the federal standards outlined in the MUTCD with respect to pedestrian signals, and that the MUTCD standards should apply to temporary pedestrian signals like the signal at issue in plaintiff's accident. Mr. Schneider cites to MUTCD Part 6 for the proposition that the standards apply universally to permanent and temporary traffic control signals, and highlights the following MUTCD Part 6 language in support of his position:
the basic safety principles governing the design of permanent roadways and roadsides should also govern the design of temporary traffic control ("TTC") zones. The goal should be to route road users through such zones using roadway geometrics, roadside features, and TTC devises as nearly as possible comparable to those for the normal highway situations.
Mr. Schneider affirms that the pedestrian signal at the accident site measures 12 feet 7 inches above the sidewalk level. Mr. Schneider references MUTCD section 4E.05, stating "pedestrian signal heads shall be mounted with the bottom of the signal housing including [*4]brackets not less than 7 feet or more than 10 feet above sidewalk level and shall be positioned and adjusted to provide maximum visibility at the beginning of the controlled crosswalk." Mr. Schneider states the pole was mounted upon the top of a concrete pylon and two metal bases, opining that there was "nothing that prevented the installer from moving the signal casing to the required lower height above the sidewalk" and that as configured, the temporary pedestrian signal was in violation of the MUTCD standards. Mr. Schneider opines further that the placement of the pedestrian signal to the left of the crosswalk did not place the signal within "maximum visibility" as required by the MUTCD, as traffic would be approaching from the right. Mr. Schneider opines that Plaintiff's testimony stating he never saw the pedestrian signal is expected, as its height and placement render it inadequately visible to pedestrians.
Legal Standards.
The proponent of a summary judgment motion has the burden of submitting evidence in admissible form demonstrating the absence of any triable issues of fact and establishing entitlement to judgment as a matter of law (Giuffrida v Citibank Corp., 100 NY2d 72 [2003]; Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Winegrad v New York University Medical Center, 64 NY2d 851 [1985]). The failure to make such prima facie showing requires denial of the motion, regardless of the sufficiency of any opposing papers (Winegrad, 64 NY2d at 853). Because summary judgment is a "drastic remedy," it should only be employed "when there is no doubt as to the absence of triable issues" (Andre v Pomeroy, 35 N.Y2d 361 [1974]). The court must view the evidence in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from the evidence (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]). If the moving party fails to meet this initial burden, summary judgment must be denied "regardless of the sufficiency of the opposing papers" (see id.).
Where a municipality has enacted a prior notification law, the locality establishes a defense as a matter of law where it demonstrates it did not have prior written notice of the defect. Pertinent here, Section 7-201(c)(2) of the New York City Administrative Code requires written notice for defective or unsafe conditions on sidewalks, streets, crosswalks "including any encumbrances thereon or attachments thereto." In the absence of a recognized exception, prior written notice of a defect is a condition precedent which a plaintiff is required to plead and prove to maintain an action against a municipality such as the City of New York (Smith v City of New York, 228 AD3d 472, 473 [1st Dept 2024]).
In cases where the locality establishes that no prior written notice was received, the burden shifts to the plaintiff to raise a triable issue of fact that he or she falls into one of two recognized exceptions, (1) where the municipality affirmatively created the defective condition through an act of negligence or (2) where a special use resulted in a special benefit to the locality (Smith v City of New York, 228 AD3d at 473; citing Yarborough v City of New York, 10 NY3d 726 [2008]). In instances where a plaintiff alleges that a City's actions affirmatively caused a hazardous condition, it must be shown that the work done by the City (or its agents) "immediately result[ed] in the existence of a dangerous condition" (Smith v City of New York, at 473).
Discussion.
The City is Entitled to Summary Judgment.
The City demands summary judgment arguing that it did not have prior notice of any hazardous condition affecting the intersection in question, and that it did not cause or create any condition that injured plaintiff. Alternatively, the City argues that the placement of the temporary traffic control device at issue — the pedestrian walk sign — was fully within plaintiff's field of vision and could not have served as the proximate cause of his being struck by defendants' vehicle. 
The record supports that the City received no prior written notice of the purported defect at issue. Hence, the burden shifts to plaintiff to establish an issue of fact as to whether the municipality affirmatively created an immediately hazardous condition through an act of negligence (Id.). To satisfy this burden, plaintiff, through his expert engineer, Mr. Schneider, invites this Court to conclude that, by deviating from the MUTCD recommendations governing temporary traffic control devices, defendants negligently caused plaintiff to be injured. Defendants maintain the MUTCD does not apply to "temporary traffic controls." If plaintiff is correct, defendants' violation of an ordinance, rule or regulation presents "some evidence of negligence which the jury could take into consideration," provided such violation is a proximate cause of the accident (Rizzuto v Wenger Contr. Co., 91 NY2d 343 [1998]). The City is entitled to summary judgment. 
Even if this court were to agree that the City's placement of the temporary pedestrian walk sign approximately thirteen feet above the sidewalk at the southeastern corner of East 167th Street was a departure from MUTCD standards governing the use and installation of TTCs, and it does not, the record, and most particularly the expert report by the City's expert engineer, Mr. Simon, establishes that the sign, as placed, would have been within plaintiff's field of view as he reached the southernmost point of the pedestrian meridian on the east side of the Grand Concourse at East 167th Street and began to walk southbound across the street toward the intersection's southeastern corner. Critically, Schneider's expert report in opposition is wholly silent as to whether the temporary pedestrian sign was within plaintiff's field of view as he crossed the street on the day of incident, opting to conclude only that plaintiff's testimony that he did not recall seeing the sign means that the sign was not visible. Such self-serving reasoning fails to raise a question of fact as to whether defendants' placement of the temporary pedestrian control device served as the proximate cause of plaintiff being struck by Lora's vehicle on the day of incident (Accord, Rubinfield v City of New York, 263 AD2d 448, 450 [2nd Dept 1999]["it is the function of the court to determine if a prima facie case of causation has been established in the first instance"]).
Furthermore, while Part 6 of the MUTCD device regulatory scheme may serve as a standard to be adhered to as respects the installation of permanent traffic control devices, the MUTCD language concerning the use of TTCs expresses little more than a recommendation and aspirational goal that such devices conform "as nearly as possible comparable to those for the normal highway situations." In this court's view, reliance on such aspirational values cannot provide sufficient grounds to defeat a well-supported motion for summary judgment (see, Grullon v City of New York, 297 AD2d 261 [1st Dept 2002][conclusory assertions devoid of evidentiary facts are insufficient to defeat a well-supported motion for summary judgment]; see also, Diaz v NY Downtown Hosp., 99 NY2d 542, 544 [2002][an expert's opinion should be given no probative force and is insufficient to withstand summary judgment where it is speculative or unsupported by any evidentiary foundation]).
Finally, the TTC instalment here at issue did not "immediately result in the existence of a [*5]dangerous condition" (see Smith v City of New York, at 473).
Deboe and Hellman are entitled to Summary Judgment. 
Third-party contractors do not owe a duty to non-contracting injured plaintiffs except under three scenarios: (1) where a third-party contractor fails to exercise reasonable care and "launches a force or instrument of harm"; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties; or (3) where the third-party contractor has displaced the first-party's exclusive duty to maintain the premises safely (Alfani v Rivercross Tenants Corp., 230 AD3d 1022 [1st Dept 2024] citing, Espinal v Melvill Snow Contractors., 98 NY2d 136 [2002]). Here, plaintiff does not assert he fits into one of the three categories, but rather that he is an "intended beneficiary" of the contract. "A third party may sue to enforce its rights on a contract made for its benefit in two situations: when the third party is the only one who could recover for the breach of contract or when it is otherwise clear from the language of the contract that there was 'an intent to permit enforcement by the third party'" (75 First Ave. Club LLC v United Glass Sys. Corp., 223 AD3d 491, 492 [1st Dept 2024]; citing, Dormitory Auth. of the State of New York v Samson Constr. Co., 30 NY3d 704, 709 [2018]). Otherwise, the third-party is merely an "incidental beneficiary" with no right to enforce the particular contract (see Artwear, Inc. v Hughes, 202 AD2d 76, 81 [1st Dept. 1994]).
Here, the contracts between Deboe, Hellman and the City, are not part of the record and Plaintiff cites to no provision establishing that plaintiff is within a class that is specifically benefitted under the contract, nor any "intent to permit enforcement" from plaintiff (see id). Therefore, the branch of Defendants' motion seeking dismissal of plaintiff's claims against Deboe and Hellman is granted.
Accordingly, it is hereby:
ORDERED that the motion (Mot. Seq. 1) by Defendants, CITY OF NEW YORK DEPARTMENT OF DESIGN AND CONSTRUCTION, DEBOE CONSTRUCTION CORP., and HELLMAN ELECTRIC COMPANY for an order granting summary judgment is GRANTED in its entirety, it is further, 
ORDERED that the moving parties shall serve a copy of this decision and order upon the plaintiff within 30 days hereof; and it is further, 
ORDERED that the remaining parties appear for a pre-trial conference on February 19, 2025, at 9:30AM in courtroom 607. 
ORDERED that the Clerk of this Court is directed to enter judgment accordingly. 
This constitutes the Decision and Order of this Court. 
Dated: January 10, 2025
JOHN A. HOWARD-ALGARIN, J.S.C.

Footnotes

Footnote 1:In light of the robust discourse between the parties' experts concerning the propriety of the design of the pedestrian traffic sign at the incident location, this Court must conclude that there indeed was a pedestrian traffic sign on site on East 167th where plaintiff sought to cross, notwithstanding plaintiff's equivocal testimony to the contrary.